IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AUDATEX NORTH AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-cv-139 (GMS) |
| | ) | |
| MITCHELL INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

On February 6, 2012, the plaintiff, Audatex North America, Inc. ("Audatex"), filed suit against the defendant, Mitchell International, Inc. ("Mitchell"), alleging infringement of U.S. Patent Nos. 7,912,740 and 8,200,513. (D.I. 1.)  On October 17, 2012, Mitchell filed a Motion to Transfer (D.I. 15), pursuant to 28 U.S.C. § 1404(a), seeking to transfer the above-captioned action to the Southern District of California.  For the reasons that follow, the court will grant Mitchell's motion.

### II.   BACKGROUND

As described in the Complaint and the parties' briefing in connection with the instant motion, Audatex is a Delaware corporation with its principal place of business in San Diego, California. (D.I. 1 at ¶ 1.)  Likewise, Mitchell is also a Delaware corporation with its principal place of business and headquarters in San Diego, California.  (Id. at ¶ 2.)  Audatex claims that Mitchell infringed its patents through the national use, sale, and marketing of Mitchell's WorkCenter™ software.  (Id. at ¶¶ 9-12.)

## III.   STANDARD OF REVIEW

28 U.S.C. 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404.  The provision affords district courts with "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3rd Cir. 1995).  In this assessment, the court undertakes a two-step inquiry to determine whether a motion to transfer should be granted.  First, the court must establish whether the action is one that could have originally been brought in the proposed transferee forum.  *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3rd Cir. 1970).  Second, the court must then weigh whether transfer would best serve the interests of convenience and justice.  *See Jumara*, 55 F.3d at 879.  The burden rests on the defendant to show that transfer is appropriate at each step, *id.* (citing *Shutte*, 431 F.2d at 22), and, "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail" *Shutte*, 431 F.3d at 25 (citing *Owatonna Manufacturing Co. v. Melore Co.*, 301 F. Supp. 1296, 1307 (D. Minn. 1969)).

## IV.   DISCUSSION

### A.  The Propriety of the Transferee Forum

Under 28 U.S.C. § 1404(a), the proposed transferee forum must be one in which the action might have originally been brought.  28 U.S.C. § 1404(a).  Accordingly, the court may only grant Mitchell's motion to transfer to the Southern District of California if venue would have been proper there and if that district court could have exercised personal and subject matter jurisdiction in the action.  *See* 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed. 2012).

2

As noted, both parties maintain their principal place of business in San Diego, California. (D.I. 1 at ¶¶ 1-2.) In addition, both parties' headquarters are located in the Southern District of California. Thus, it is clear that each party has sufficient minimum contacts with the proposed transferee forum to provide that district court with personal jurisdiction. *See* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."); *see also id.* §§ 1391(b)(1), 1391(d); FED. R. CIV. P. 4(k). Likewise, as a patent dispute, the Southern District of California would have subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1338(a), which provides district courts with original jurisdiction in such matters. *See* 28 U.S.C. § 1338(a). Thus, the court finds that this action could have been brought originally in the proposed transferee forum and proceeds to the second step of the transfer analysis.

## B. The *Jumara* Analysis

The court must next consider whether transferring this action to the Southern District of California would serve the interests of convenience and justice. *See Mitel,* 2013 WL 1856457, at *5. The Third Circuit has instructed that courts considering a transfer motion should perform a case-by-case analysis, rather than apply a "definitive formula." *See Jumara,* 55 F.3d at 879. This assessment should take into account the various public and private interests protected and defined in § 1404(a). The private interests may include:

> Plaintiff's forum preference as maintained in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

3

the enforceability of the judgment: practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

Importantly, the *Jumara* analysis is not limited to these explicitly enumerated factors, and no one factor is dispositive. *See id.* at 879. The court addresses each of these "*Jumara* factors" in turn.

    1.  Private Interest Factors

        a.  *The Plaintiff's Forum Preference*

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Id.* at 879. Mitchell argues that Audatex's choice of forum is entitled to little weight, because Audatex has chosen to litigate in Delaware, which is not its "home turf" and is a forum with little connection to this case. (D.I. 16 at 6.) Conversely, Audatex contends that its choice of forum is entitled to "heightened deference" and should not be lightly disturbed because it is incorporated in Delaware, making this district its "home turf." (D.I. 19 at 6.)

Audatex is correct that, under the § 1404(a) analysis, the plaintiff's choice of forum is typically afforded heightened deference, particularly where the plaintiff has chosen to litigate on its home turf. *See AIP Acquisition LLC v. iBasis, Inc.*, No. 12–616 GMS, 2012 WL 5199118, at *3 (D. Del. Oct. 19, 2012); *see also Shutte*, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" (citation omitted)). Indeed, Audatex and Mitchell chose to avail themselves of the "advantages of Delaware corporate law" and to the "risk of suit in Delaware" by incorporating there, leaving Mitchell with a comparatively "uphill battle"

to demonstrate inconvenience. *See Praxair, Inc. v. ATMI, Inc.*, No. 03-1158-SLR, 2004 WL 883395, at *2 (D. Del. Apr. 20, 2004); *see also Mitel*, 2013 WL 1856457, at * 5. However, as the court recently explained in *Smart Audio Technologies, LLC v. Apple, Inc.*, the deference afforded to a plaintiff's choice of forum is shown primarily by placing the initial burden on the movant to demonstrate that the balance of convenience "strongly" favors transfer. *See Smart Audio Technologies, LLC v. Apple, Inc.*, C.A. No. 12-134-GMS, 2012 WL 5865742, at *4 (D. Del. Nov. 16, 2012). Specifically, as an individual *Jumara* factor, a plaintiff's forum preference receives enhanced weight only where it has chosen to file suit on its home turf or can identify a rational and legitimate reason for litigating in Delaware. *See id.*

Here, Audatex is a Delaware corporation and its forum choice is, therefore, entitled to some measure of heightened deference. While Audatex is correct that the "court has observed that a corporate entity's state of incorporation is part of its 'home turf,'" it is not alone dispositive in the analysis. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011). In fact, "[t]he court . . . recognizes that, when a plaintiff chooses to bring an action in a district where it is not physically located, its forum preference is entitled to something less than . . . paramount consideration." *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2012 WL 105323, at *3 (D. Del. Jan. 7 2013); *see also In re Link_A_Media*, 662 F.3d at 1223 (using the term "home forum" to refer to the jurisdiction in which a party is physically located and noting that "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference"). Therefore, because Audatex chose to litigate in the forum where it is incorporated, rather than the forum where its principal place of business is located, its choice is entitled to less deference than it would typically receive. *See AIP*, 2012 WL 5199118, at *3.

Consequently, this factor weighs against transfer and is accorded heightened, but not maximum, deference as an individual *Jumara* factor.

### b.  *The Defendant's Forum Preference*

The second private interest factor is the defendant's choice of forum.  *Jumara*, 55 F.3d at 879.  Mitchell has indicated that it prefers to litigate in the Southern District of California for three reasons: (1) both it and Audatex's principal places of business are located in the Southern District of California (D.I. 25 at 4); (2) the majority of witnesses with knowledge relevant to the non-infringement issues in this case are located in the proposed transferee district (*id.*); and (3) the primary acts giving rise to this suit—the making, using, and selling of the WorkCenter™ software—occurred in California (*id.*).  While the court will address Mitchell's latter two reasons for seeking transfer in its examination of the other private interest *Jumara* factors below, Mitchell has clearly expressed a preference for litigating in the district where it and Audatex maintain their principal places of business.  The court finds Mitchell's preference to be a legitimate and rational reason for seeking an alternative forum.  *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. Jan. 23, 2012).  Thus, this factor weighs in favor of transfer.

### c.  *Whether the Claim Arose Elsewhere*

The third private interest factor the court must consider is "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879.  "[A]s a matter of law, a claim for patent infringement arises whenever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)); *see also Smart Audio Techs.*, 2012 WL 5865742, at *7.  Accordingly, where the defendant in a patent infringement action operates on a national level, this factor is often neutral.

Importantly, however, the court has recognized that, "[t]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." *Smart Audio Techs.*, 2012 WL 5865742, at *7 (quoting *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012)); *see also Intellectual Ventures*, 842 F. Supp. 2d at 755 ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." (quoting *In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)). Mitchell contends that a substantial portion of the alleged infringement of the WorkCenter™ software—the making, using, and selling of the software—occurred in the Southern District of California. (D.I. 16 at 8.) Mitchell and Audatex are both substantially national corporations, allegedly active in every state. Thus, here, there is no implication of local interests as demarcated by the loci of corporate activity. (D.I. 19 at 7-8); *see also AIP*, 2012 WL 5199118, at *3. However, because the patent infringement claims arise from infringing products that were designed and manufactured in a single, discrete location, this factor weighs slightly in favor of transfer. *See Mitel*, 2013 WL 1856457, at *4.

d. *The Convenience of the Parties*

The court must also determine whether the proposed transferee forum would be more convenient for the parties. *See Jumara*, 55 F.3d at 879. In this assessment, the court weighs several considerations, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Mitel*, 2013 WL 1856457, at *4 (quoting *Smart Audio Tech.*, 2012 WL 5865742, at *7 (internal quotation omitted)). To this end, the court

7

is tasked with assessing the "convenience of the parties as indicated by their relative physical and financial condition." *See Jumara*, 55 F.3d at 879.

Mitchell suggests that litigating in the Southern District of California is more convenient for both parties because: (1) Mitchell and Audatex operate their principal places of business in the proposed transferee forum,[1] such that all "relevant officers, employees, books, and records" are located in southern California, not Delaware (D.I. 16 at 9 (citing *Illumina, Inc. v. Complete Genomics, Inc.*, No. 10-649-RFK, 2010 WL 4818083, at *3 (D. Del. Nov. 9, 2010)); (2) Mitchell's employees, including those who could testify about the operation of its WorkCenter™ software and the damages in this case, are located in the proposed forum, such that, although they can be compelled to testify, it would be more convenient for them to do so in California (*id.*); and (3) no witness—party associated or third party—is located in Delaware (*id.* at 9-10). In response, Audatex asserts that this factor does not weigh in favor of transfer because Mitchell is a large company with sufficient financial resources to litigate in its state of incorporation, rendering inconvenience arguments moot. (D.I. 19 at 10-11.)

While Audatex is correct that the "relative ability of each party to bear [litigation] costs in light of its size and financial wherewithal" is a key consideration in the court's "convenience of the parties" analysis, it is not dispositive and is, instead, assessed in conjunction with the parties' physical location and associated logistical and operational costs. *Mitel*, 2013 WL 1856457, at *4 (quoting *Smart Audio Tech.*, 2012 WL 5865742, at *7 (internal quotation omitted)). While the court has not been presented with enough information to fully assess the relative financial resources of the parties, it appears from the parties' briefing that each has sufficient financial resources to litigate in either forum, such that this consideration, assessed alone, would be neutral.

---

[1] Mitchell further contends that Audatex has little, if any, contact with Delaware and does not have an office in the District. (D.I. 16 at 9.)

This finding, however, does "not blind the court to the inevitable costs and disruptions that cross-country litigation imposes." *Mitel*, 2013 WL 1856457, at \*5 (quoting *Linex Techs., Inc. v. Hewlett–Packard Co.*, No. 11-400-GMS, 2013 U.S. Dist. LEXIS 1924, at \*13 (D. Del. Jan. 7, 2013)).

Here, although both parties have a national presence, neither has a physical presence in Delaware and instead operate out of the Southern District of California. Therefore, should the action remain in Delaware it is likely that both parties will incur travel costs. Presumably, however, because both have their principal place of business in the proposed transferee district, the cost of litigating in California would be less than litigating in this District. Specifically, Mitchell lists at least four Audatex employee inventors who reside in the Southern District of California, as well as three other inventors who live in Oregon and the Northern District of California. Notably, Audatex does not argue that it would be inconvenient to litigate in the Southern District of California.

Importantly, however, Audatex correctly notes that Mitchell is incorporated in Delaware and, therefore, has submitted to suit in this District. Indeed, "a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." *Intellectual Ventures I*, 842 F. Supp. 2d at 756; *see also Linex Techs., Inc.*, 2013 U.S. Dist. LEXIS 1924, at \*15; *AIP Acquisition*, 2012 WL 5199118, at \*4 ("[T]he court finds it significant that [the defendant] is a Delaware corporation and has necessarily consented to suit in this jurisdiction."). The decision to incorporate in Delaware suggests that the inconvenience of litigating here is somewhat less than the court would ordinarily presume it to be in this case. However, because both parties operate out of the proposed transferee district and relevant witnesses live in that District or in close

9

proximity to it, the court finds that litigating in the Southern District of California would prove more convenient for both. Thus, having considered each element of this *Jumara* factor, the court concludes that it weighs slightly in favor of transfer.

e. *The Convenience of the Witness*

The next *Jumara* factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879. Mitchell contends that convenience of the witnesses is best achieved in the proposed transferee forum because "availability" in the *Jumara* analysis is examined in reference to a forum's subpoena power over potential witnesses and, here, four of the seven potential witnesses are Southern District of California residents. (D.I. 16 at 10.) Mitchell further asserts that it "need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of [the] venue transfer analysis if the witness is not subject to a court's subpoena power." (D.I. 25 at 6 (quoting *Nilssen v. Everbrite, Inc.*, No. 00-189-JJF, 2001 WL 34368396, at *2 (D. Del. Feb. 16, 2001) (citing *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F.Supp.2d 505, 511 (D.Del. 2012)).)

In response, Audatex argues that Mitchell has not demonstrated witness inconvenience because it has failed to show that the witnesses would be "unable or unwilling" to travel to Delaware. (D.I. 19 at 9 (quoting *Carl Zeiss*, 2011 WL 1419714, at *3).) Specifically, Audatex notes that Mitchell has not submitted affidavits from the seven witnesses stating an unwillingness or inability to travel to Delaware, and has instead focused its entire argument on the fact that the District of Delaware will lack subpoena power. Moreover, Audatex maintains that the location of party witnesses, to the extent that those are the witnesses Mitchell is referencing, is immaterial. (*Id.*)

10

As an initial matter, the court notes that Audatex is correct that "witnesses employed by the parties are not considered by a court conducting venue transfer analysis because the parties are obligated to procure the presence of their own employees at trial." *Nilssen*, 2001 WL 34368396, at *2. Here, four of the seven inventor witnesses Mitchell identifies are current Audatex employees or employees of its subsidiary, Claims Services Group, Inc. (D.I. 19 at 9-10.)  The other three witnesses are represented by Audatex's counsel.  (*Id.*)  Thus, Audatex would be required to procure the testimony of its four employees should a trial occur in this District.

With regard to the remaining inventor witnesses Mitchell identifies, Audatex overstates the moving party's burden of demonstrating that a third-party witness will be unavailable or unwilling to travel to Delaware.  In this assessment, the court does not require such a clear statement—it is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe that those witnesses will refuse to testify absent subpoena power.  *See Smart Audio Techs*, 2012 WL 5865742, at *8 ("[T]his factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena."); *see also AIP Acquisition*, 2012 WL 5199118, at *4; *Acuity Brands, Inc. v. Cooper Indus., Inc.*, No. 07-444-GMS, 2008 WL 2977464, at *2 (D. Del. July 31, 2008).   Here, however, the location of the other three witnesses does not weigh for or against transfer because each resides outside the subpoena power of this court and of the U.S. District Court for the Southern District of California.[2]   Thus, because Mitchell has failed to establish the Southern District of California as a more convenient forum, the court finds this factor is neutral.

f. *The Location of Books and Records*

---

[2] Audatex notes that two of the inventors currently reside in Oregon and the third resides in the Northern District of California.  (D.I. 19 at 9-10.)

11

Finally, the court accounts for "the location of books and records (similarly limited to the extent that the files could not be produced in an alternative forum)." *Jumara*, 55 F.3d at 879. Mitchell maintains that "virtually all" relevant books and records are located in California. Specifically, it notes that likely sources of proof, including documentation and computer source code, are housed in its California headquarters and that no relevant sources are located in Delaware. (D.I. 16 at 12.) Moreover, Mitchell notes that other non-party documents are likely located in California because at least four of the seven inventors reside there as well as one prior assignee of the patents-in-suit. (*Id.* at 12-13.) Mitchell argues that, because "the bulk of the relevant evidence usually comes from the accused infringer[,] . . . the place where the defendant's documents are kept weighs in favor of the transfer to that location." (*Id.* at 13.) Conversely, Audatex contends that this factor has been "rendered irrelevant" by advances in modern technology that make documents readily available irrespective of location or origin. (D.I. 19 at 11.) Audatex notes that Mitchell also has not stated that it cannot produce the records in Delaware. (*Id.*)

In consideration of the parties' arguments and the relevant law, the court agrees with Mitchell. The court has, in fact, recognized that the "bulk of the relevant evidence" in such cases does come from the accused infringer, such that the location of the defendant's documents can favor transfer. *See Smart Audio Techs*, 2012 WL 5865742, at *9. While Audatex is correct that "technological advancements have significantly reduced the weight to be accorded this factor," importantly, "the court may not simply ignore the location of relevant books and records." *AIP*, 2012 WL 5199118, at *4; *see also See In re Link_A_Media Devices Corp.*, 662 F.3d at 1224. Because Mitchell's principal place of business and headquarters are located in the Southern

12

District of California, it is reasonable to presume that much of the evidence will be found there. As such, this factor weighs slightly in favor of transfer.

> 2.  Public Interest Factors

The parties limit their briefing on the public interest factors to: (1) "practical considerations that make the trial easy, expeditious, or inexpensive"; (2) "local interest in the controversy"; and (3) relative administrative difficulty.  (D.I. 16; D.I. 19; D.I. 25.)  Therefore, because the parties are in agreement that all other factors are neutral, the court will not address the factors of: enforceability of the judgment; public policies of the fora; or the court's familiarity with relevant state law.

> a.  *Practical Considerations*

*Jumara* instructs that courts should look to "practical considerations that could make the trial easy, expeditious, or inexpensive."  55 F.3d at 879.  Mitchell contends that transferring this action to the Southern District of California would make trial easier, more expeditious, and less expensive because: (1) it would eliminate the need for local counsel; and (2) "virtually every material witness associated with" it and a number of third-party witnesses are located in California, which would reduce travel costs.  (D.I. 16 at 13-14.)  In response, Audatex asserts that the practical considerations in this case weigh against transfer or are, at best, neutral, because this factor is limited to assessing "the broader public costs of transfer" and not the "private costs that the parties might incur."  (D.I. 19 at 12 (citing *AIP Acquisition*, 2012 WL 5199118, at *5).)  Audatex also notes that, even if the court were to consider such factors in this analysis: (1) counsel for both parties maintain offices in Delaware and the Southern District of California (*id.*); and (2) Audatex and Mitchell are large, sophisticated corporations, that can equally bear the costs of travel (*id.* at

10 (citing *Checkpoint Software Techs*, 797 F. Supp. 2d at 485; *Textron Innovations, Inc. v. The Toro Co.*, No. 05-486-GMS, 2005 WL 2620196, at *2 (D. Del. Oct. 14, 2005)).)

The parties do not detail and the court does not identify any "broader public costs of transfer" that would result from granting or denying the instant motion. Specifically, the parties do not highlight any issues of judicial economy and efficiency that would weigh in the transfer analysis and, instead, focus their arguments on such considerations as private costs and party convenience. Thus, the court finds that, to the extent there are public cost considerations posed by this action, such factors are neutral.

With respect to the other arguments Mitchell raises, the court notes that, while it did not take into consideration issues of economic cost and logistical convenience as these factors relate to potentially relevant Audatex employees and "witness convenience," it can consider such factors here in determining the balance of "practical considerations." Specifically, and essentially for the same reasons advanced in connection with the "convenience of the parties" and "location of books and records" private interest factors detailed above, the court finds that trial in the Southern District of California would prove less expensive than proceeding with trial in the District of Delaware, where neither of the parties have employees or maintain offices, facilities, or records. The court also notes that litigating in the proposed transferee district would likely prove less expensive for the three non-party inventor witnesses who live in closer proximity to the Southern District of California than to Delaware. Thus, in view of the foregoing, the court concludes that this public interest factor weighs slightly in favor of transfer.

b. *Relative Administrative Difficulty*

The court also considers the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Mitchell asserts that the Southern District of

14

California's docket is less congested than the District of Delaware's docket with respect to average time to disposition. (D.I. 16 at 14.) Mitchell details statistics showing that while the average time to trial in the District of Delaware is shorter compared to the Southern District of California at 27.55 and 30.2 months, respectively, the average time to disposition is longer in the District of Delaware. (*Id.*) Specifically, Mitchell represents that the time to disposition in the District of Delaware is 11.3 months compared to 6.2 months in the Southern District of California. (*Id.*)

In addition, Mitchell notes that, since August 27, 2010, only 212 patent cases have been filed in the Southern District of California, yielding an average of approximately 13 cases per district judge, while in the District of Delaware 1,110 patent cases were filed in the same time frame, resulting in roughly 253 cases per district judge. (*Id.*) However, in light of the time to trial estimates Mitchell cites and the recent filling of vacant judgeships in this District[3], the court finds that Mitchell has failed to demonstrate that the number of cases in Delaware will result in any material administrative difficulty, increased time to trial, or prejudice the parties in anyway. Thus, the court weighs this factor only lightly in favor of transfer.

c. *Local Interest in the Litigation*

Finally, the transfer analysis requires that the court examine "any local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. Audatex argues that Delaware, as the state of incorporation for both it and Mitchell, has a clear interest in settling disputes between two of its "corporate citizens." (D.I. 19 at 11 (citing *Intellectual Ventures*, 842 F. Supp. 2d at 760).) Conversely, Mitchell asserts that the Southern District of California has a significant interest in litigating this action because both parties maintain their headquarters in the proposed transferee forum. (D.I. 16 at 14.) Mitchell also asserts that the "local nature" of the controversy, indicated

---

[3] The court notes that the figures Mitchell provides represents averages over the past six years. (D.I. 16 at 14.)

by "significant connections between a particular venue and the events that gave rise to a suit," is the sole element of this test and that, because WorkCenter™ is made and marketed in the Southern District of California, this factor heavily favors transfer. *(Id.* (citing *Hoffman-LaRoche*, 587 F.3d at 1333).)

The court, however, recently concurred with the position Judge Robinson expressed on this issue in *Helicos Biosciences Corp. v. Illumina, Inc.*, wherein she explained:

> [P]atent litigation does not constitute a local controversy in most cases. Patent cases implicate constitutionally protected property rights. The resolution of patent cases is governed by federal law reviewed by courts of national (as opposed to regional) stature. Moreover, to characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were establish to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases.

858 F. Supp. 2d 367, 375 (D. Del. 2012). Thus, this factor is typically neutral in the context of patent litigation because patent issues usually "do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs, Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2009).

The court reaches the same conclusion here, as it is not convinced by either parties' argument that there is a local interest in this action that would weigh in favor of transfer. To the contrary, while there may well be an "interest" in both jurisdiction for the reasons the parties advance, the court disagrees that that interest represents a "local controversy" in the context relevant here. This action is governed under federal law, brought against a national corporation, and concerns a product available nationally. Therefore, the court finds that this action implicates a national, rather than a local, controversy, rendering this public interest factor neutral.

## C. Transfer Analysis Summary

16

Considering the *Jumara* factors as a whole, the court concludes that the defendants have met their burden of demonstrating that the interests of justice and convenience strongly favor transfer. Only Audatex forum preference weighs against transfer and, as the court explains above, that preference does not warrant maximum deference in this case. On the other hand, several factors counsel transfer: Mitchell's choice of forum; the location where the claims arose; the convenience of the parties; the location of relevant books and records; and relative administrative difficulty.

## V.    Conclusion

For the reasons discussed above, the court will grant Mitchell's Motion to Transfer (D.I. 15) this action to the Southern District of California pursuant to 28 U.S.C. § 1404(a).

Dated: June **2 9**, 2013

CHIEF, UNITED STATES DISTRICT JUDGE

17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AUDATEX NORTH AMERICA, INC.,     ) | |
|        ) | |
|     Plaintiff,     ) | |
|        ) | |
| v.     ) | C.A. No. 12-cv-139 (GMS) |
|        ) | |
| MITCHELL INTERNATIONAL, INC.,     ) | |
|        ) | |
|     Defendant.     ) | |
|        ) | |

## ORDER

At Wilmington, this 28th day of June, 2013, consistent with the Memorandum Opinion

issued this same date, IT IS HEREBY ORDERED THAT:

1. Mitchell's Motions to Transfer Venue to the Southern District of California (D.I. 15) is GRANTED; and

2. The above-captioned action is transferred to the U.S. District Court for the Southern District of California.

_____
CHIEF, UNITED STATES DISTRICT JUDGE