UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDATEX NORTH AMERICA INC., <br><br>Plaintiff, <br><br>v. <br><br>MITCHELL INTERNATIONAL, INC., <br><br>Defendant. | Case No. 13cv1523-BEN (BLM) <br><br>**ORDER:** <br><br>**(1) GRANTING PLAINTIFF'S MOTION TO COMPEL DISCOVERY;** <br><br>**AND** <br><br>**(2) DENYING PLAINTIFF'S MOTION FOR COSTS AND ATTORNEY'S FEES INCURRED IN MAKING THIS MOTION.** <br><br>[ECF No. 66] |

On August 6, 2014, counsel for both parties jointly contacted the Court regarding a discovery dispute, for which the Court set a briefing schedule. ECF No. 63. In accordance with the Court's Order, Plaintiff Audatex North America Inc. ("Audatex") filed a Motion to Compel Discovery Regarding Source Code and Damages on August 15, 2014. ECF No. 66. In its motion, Audatex also requested the Court to award its costs and attorney's fees incurred in connection with this motion. Id. at 14-15. Defendant Mitchell International, Inc. ("Mitchell") timely filed an opposition on August 29, 2014. ECF Nos. 70, 74. On September 5, 2014, Plaintiff replied in support of the motion to compel. ECF No. 82.

Having considered all of the briefing and supporting documents presented, and for the reasons set forth below, Plaintiff's motion to compel discovery is **GRANTED**. Plaintiff's motion for its costs and attorney's fees incurred in connection with this motion is **DENIED**.

## BACKGROUND

Plaintiff and Defendant are competitors in the insurance estimation and loss valuation industry. ECF Nos. 57 at 2, 60 at 3. On February 6, 2012, Plaintiff filed this case asserting patent infringement involving computerized systems for automobile insurance claim analysis.[1] Plaintiff alleges patent infringement by Defendant through the manufacture, use, and sales of products, including "Mitchell's 'Work Center' software and related services." ECF No. 57 at 4, 7, 9.

In February 2014, Plaintiff served interrogatories and requests for production (RFPs) on Defendant. ECF No. 66-1 at 6. Plaintiff claims that Defendant provided unsatisfactory responses to many of its discovery requests and asks the Court in the instant motion to enter an order compelling Defendant to "provide source code citations" requested in Interrogatories Nos. 1 and 8. Id. at 5-6, 14. Plaintiff further asks the Court to compel Defendant to "produce and identify sales and financial documents related to the accused products" requested in RFP Nos. 34-38 and Interrogatory No. 15, and to award its costs and attorney's fees incurred in connection with this motion. Id. at 5-6, 14-15. Defendant claims that it has already provided or agreed to provide responses to all of Plaintiff's discovery requests and that Plaintiff's requests asserted in the instant motion to compel are "unduly burdensome" and "seek[] irrelevant information." ECF No. 70 at 5. Defendant thus argues that Plaintiff's motion should be denied. Id. at 5, 16.

---

[1] In its initial complaint filed on February 6, 2012, Plaintiff alleged infringement of U.S. Patent No. 7,912,740 B2 ("the '740 Patent"), claiming an invention entitled "System and Method for Processing Work Products for Vehicles Via the World Wide Web." ECF No. 1 at 2-4. On August 13, 2012, Plaintiff filed a First Amended Complaint ("FAC") adding an additional claim alleging infringement of U.S. Patent No. 8,200,513 B2 ("the '513 Patent"). ECF No. 12 at 4-6. On April 23, 2014, Plaintiff filed its "Supplemented First Amended Complaint for Patent Infringement," the operative complaint in this case, adding a third claim alleging infringement of U.S. Patent No. 8,468,038 B2 ("the '038 Patent"). ECF No. 57 at 8-10.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure generally allow for broad discovery, authorizing parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Also, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Id. Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence," and need not be admissible at trial to be discoverable. Id. There is no requirement that the information sought directly relate to a particular issue in the case. Rather, relevance encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be [presented] in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(c). Limits should be imposed where the burden or expense outweighs the likely benefits. Id.

A party may request the production of any designated documents, electronically stored information or "tangible things" within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1).

An interrogatory may relate to any matter that may be inquired under Rule 26(b). Fed. R. Civ. P. 33(a)(2). The responding party has the option in certain circumstances to answer the interrogatory by specifying responsive records and making those records available to the interrogating party. Id. at 33(d).

# DISCUSSION

## A. Interrogatory No. 1

Interrogatory No. 1 requests the following: "State the complete basis for your denial that Mitchell infringes any of the claims of the patents-in-suit, including directly, indirectly, literally and by the doctrine of equivalents, including by identifying all relevant facts, documents, source code (by file and line number), and persons with relevant knowledge." ECF No. 66-5, Exh. C at 3. Defendant initially objected to the interrogatory, but subsequently provided five supplemental responses. Id. at 2. In its fifth supplemental response, Defendant objected that Interrogatory No. 1 was premature, because discovery was still ongoing, that the interrogatory sought Defendant's complete contentions regarding non-infringement, and called for expert opinion and testimony. Id. Defendant also stated that the interrogatory was overboard and unduly burdensome, to the extent it sought "all relevant facts, documents, source code (by file name and line number), and persons with relevant knowledge," and "failed to identify any specific infringing products."[2] Id. Defendant further stated that "UltraMate [was] not properly accused of infringement" and that it had "no relevance to the claims of the patents-in-suit given that any data input by an UltraMate user [was] input off-line and not through a website." Id. With respect to its WorkCenter product, Defendant denied any infringement of the patents-in-suit "directly, indirectly, literally, and/or by the doctrine of equivalents," because "it d[id] not perform certain recited steps in the method claims or include certain limitations recited in the system/device/computer program claims." Id. Defendant listed specific "steps and limitations absent from the accused WorkCenter product,"[3] and incorporated by reference

---

[2] Defendant further asserted that the interrogatory purported to be a single interrogatory, but contained multiple subparts, sought privileged information and the production of information regarding source code, which was not in accordance with the parties' Protective Order. ECF No. 66-5, Exh. C at 3-4.

[3] For example, in one of its narrative responses to the interrogatory, Defendant stated that it did not "make, use, offer for sale, or sell 'web pages [that] allow for receipt of data relating to an insurance claim for a damaged vehicle and transmission of a valuation report for the damaged vehicle,' as required by claims 18 and 24 of the '740 patent and their dependent claims because the accused WorkCenter product d[id] not utilize web pages that allow for receipt of data and also transmit a valuation report, as require[d] by the claims." ECF

its "forthcoming" expert report on non-infringement. See id. at 4-7.

Plaintiff alleges that Defendant's response to the interrogatory is insufficient because Defendant did not provide the "factual basis for any denials of infringement, including source code citations to the extent that [Defendant's] non-infringement contentions are based on source code." ECF No. 66-1 at 8-9. Plaintiff further asserts that Interrogatory No. 1 is not premature and warrants Defendant's response because Plaintiff's initial complaint was filed two and half years ago, the deadline for substantial completion of document discovery has passed, and the parties have exchanged infringement and invalidity contentions, preliminary and responsive claim construction contentions, technical documents, and other related discovery. Id. at 10. Plaintiff maintains that Defendant's answer to the interrogatory also will streamline discovery. Id.

Defendant objects to Plaintiff's request claiming that it is "extremely burdensome" and improperly shifts the burden to Defendant to prove that it does not infringe Plaintiff's patents. ECF No. 70 at 9-10. Defendant alleges that the interrogatory improperly seeks Defendant's review of Plaintiff's work product, namely its infringement contentions, and claims that Plaintiff should confirm its understanding of the operation of Defendant's source code through a deposition, and not by compelling Defendant to respond to the challenged interrogatory. Id. at 9. Defendant further argues that Plaintiff's non-infringement interrogatory is premature, because while the parties have exchanged written discovery, Plaintiff has taken only one deposition and the claim construction hearing has not been held. Id. at 10-11. Defendant claims that it has sufficiently responded to the interrogatory by identifying the limitations not present in the accused product and explaining why those limitations were not met. Id. at 11. Defendant thus argues that Plaintiff's motion to compel further response to Interrogatory No. 1 should be denied. Id. at 8, 11.

---

No. 66-5, Exh. C at 6. In another narrative response, Defendant stated that it "d[id] not 'receiv[e] a vehicle year, a model and a geographical location,' as required by claim 1 of the '038 patent and its dependent claims because the accused WorkCenter product d[id] not utilize this information to generate a valuation report, as required by the claim." Id. at 7.

Plaintiff replies that requiring Defendant to disclose basic facts in support of its non-infringement defenses will not impose an undue burden on Defendant and will not improperly shift the burden to Defendant to prove that it does not infringe Plaintiff's patents-in-suit. ECF No. 82 at 2. Plaintiff asserts that "either Mitchell does not intend to rely on its source code as demonstrating non-infringement (in which case it needs only say so), or Mitchell does in fact believe that one or more of its non-infringement arguments is supported by certain aspects of its source code (in which case it needs only point to the code . . . )." Id. at 2-3 (emphasis omitted). Plaintiff also challenges Defendant's assertion that answering the interrogatory would be "extremely burdensome," while providing the same information in a deposition would not be, argues that Defendant is not entitled to dictate Plaintiff's discovery strategy, and claims that it would be able to depose Defendant's engineers more efficiently after reviewing Defendant's complete written discovery responses. Id. at 4-5. Plaintiff further claims that Interrogatory No. 1 is not premature, because Defendant already possesses detailed information about Plaintiff's infringement contentions (with citations to Defendant's source code) and the parties' claim construction positions. Id. at 4. Plaintiff alleges that if Defendant's non-infringement contentions are dependent on the outcome of the parties' claim construction disputes, Defendant should state so in its interrogatory response. Id.

Patent Local Rule 3.4 requires a party opposing a patent infringement claim to produce or make available, to accompany its invalidity contentions, its "[s]ource code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects . . . of any Accused Instrumentality identified by the patent claimant in its Patent L.R. 3.1c chart." Patent L.R. 3.4. A contention interrogatory at the early stages of litigation is not premature where "the responses to the interrogatory would 'contribute meaningfully' to: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) providing a substantial basis for a motion under Rule 11 or Rule 56." Facedouble, Inc., 2014 WL 585868, at *2 (citing HTC Corp. v. Tech. Prop. Ltd., 2011 WL 97787, at *2 (N.D. Cal.

Jan. 12, 2011); In re Convergent Tech. Sec. Litig., 108 F.R.D. 328, 338-39 (N.D. Cal. 1985)). A non-infringement contention interrogatory is appropriate where plaintiff has provided its infringement contentions with corresponding claim charts, thereby allowing defendant to respond. Facedouble, Inc., 2014 WL 585868, at *2.

The Court agrees with Plaintiff that Interrogatory No. 1 is not premature at this stage of the litigation. See ECF No. 66-1 at 10; see also ECF No. 82 at 4. The case has been pending for over two and a half years, and the parties have exchanged infringement and invalidity contentions, preliminary and responsive claim construction contentions, and supporting documentation. See ECF Nos. 1, 62, 66, 77, 80, 88, 89. Additionally, the parties already have exchanged written discovery and conducted at least one deposition. See ECF No. 70 at 3. As such, Defendant possesses "sufficient information to formulate its non-infringement contentions." Facedouble, Inc., 2014 WL 585868, at *3 (after infringement contentions and supporting documents were served and claim construction positions were known, "Defendant cannot assert that it does not have sufficient information to formulate its non-infringement contentions.").

Defendant argues that the interrogatory improperly seeks Defendant's review of Plaintiff's infringement contentions, thereby imposing a significant burden on Defendant. See ECF No. 70 at 9 (citing Apple Inc. v. Samsung Elecs. Co., 2013 WL 1563253, at 2 (N.D. Cal. Apr. 12, 2013) ("[h]av[ing] Samsung match its source code to Apple's contentions . . . is unduly burdensome to Samsung and outside of its obligation.")). The Court agrees with Plaintiff that Apple, Inc. is distinguishable from this case because in Apple Inc., the patentee sought source code information for infringement contentions that the patentee had drafted, whereas this case involves the accused infringer's non-infringement contentions. ECF Nos. 66-1 at 9, 82 at 3; Apple Inc., 2013 WL 1563253, at *1-2. Further, the request in Apple Inc. concerned 13,000 pages of infringement contentions covering eight asserted patents against 26 devices, as opposed to this case, where Defendant's non-infringement contentions are less than four pages long and cover three patents-in-suit. See id. Accordingly, the Court finds that the interrogatory is proper and is not unduly burdensome

to Defendant.

In its responses to Interrogatory No. 1, Defendant denied infringement of the patents-in-suit and provided several narrative explanations as to why particular claim elements are not found in the accused products. See ECF No. 66–5, Exh. C at 4-7. While many of the narrative responses identify the specific patent claim Defendant is challenging and the basis for that challenge,[4] Defendant does not identify any source code to support its contentions. The Court finds this omission to be improper and requires Defendant to identify the relevant source code. If any of Defendant's non-infringement arguments are supported by certain aspects of its source code, Defendant needs to provide citations to the appropriate sections of the code. See Facedouble, Inc., 2014 WL 585868, at *2 (requiring defendant to reference "appropriate sections of the source code" in order to support its responses to an interrogatory). If Defendant does not intend to rely on its source code to argue non-infringement, it should state so in its interrogatory response. The Court therefore **GRANTS** Plaintiff's motion to compel a supplemental response to Interrogatory No. 1 and requires Defendant to identify the relevant source code, to the extent that Defendant's non-infringement confections are based on source code.

### B.     Interrogatory No. 8

Interrogatory No. 8 requests the following: "Identify all witnesses knowledgeable about, and documents (including by Bates number and, for any source code excerpts, by line number) which describe, each of the features and functionality of the Accused Products that are the subjects of Interrogatory Nos. 4-7." ECF No. 66-6, Exh. D at 3-4. In its third supplemental response, Defendant objected to the interrogatory on the basis that it was

---

[4] See supra note 3 for examples of appropriate, detailed narrative responses to the interrogatory describing "steps and limitations absent from the accused WorkCenter product." However, in some of its responses Defendant denied that particular claim elements were found in the accused products without providing any explanation. For example, Defendant stated that it "d[id] not make, use, offer for sale, or sell 'an electronic communication network,' as required by claim 10 of the '740 patent and its dependent claims." ECF No. 66-5, Exh. C at 5. In another response, Defendant asserted that it "d[id] not make, use, offer for sale, or sell 'valuation server web pages,' as required by claims 13-16 of the '740 patent." Id. These narrative responses are not sufficiently detailed and Defendant must provide a more substantive explanation, as well as the source code identification.

unduly burdensome,[5] and identified several individuals knowledgeable about the features and functions of its accused products. Id. at 4. Defendant also relied on Fed. R. Civ. P. 33(d) and designated certain documents as examples "containing responsive information relating to the operation and functionality of Mitchell's WorkCenter product" and "relating to its UltraMate product, also known as Mitchell Estimating." Id. at 4-5.

In the instant motion to compel, Plaintiff asserts that Defendant has improperly refused to answer Interrogatory No. 8. ECF No. 66-1 at 10. Plaintiff alleges that the interrogatory seeks "the basic, high-level facts on how the WorkCenter code works," including source code citations, and claims that such facts are "centrally relevant" to its claims of infringement against WorkCenter. Id. at 4-5. Plaintiff claims that Defendant "provided at least partial responses to Interrogator[ies] Nos. 4-7," but refused to respond to Interrogatory No. 8 asking Defendant to "simply connect these earlier narrative responses to the actual facts regarding Mitchell's WorkCenter code." Id. at 10. Plaintiff alleges that Defendant's refusal to provide the requested "roadmap" of Defendant's source code has significantly prejudiced its ability to "investigate and confirm its infringement analysis" of Defendant's source code. Id. Plaintiff also maintains that unlike Defendant, whose engineers "have immeasurable experience with their own products" and thus are better equipped to provide the requested source code roadmap, Plaintiff faces an "immense" burden from having to "decipher Mitchell's large and complex software code" without the requested roadmap. Id. at 4, 11-12.

Defendant argues that no further response to Interrogatory No. 8 is warranted because it has already provided information that enables Plaintiff to understand how the

---

[5] Defendant also objected that Interrogatory No. 8 was vague, ambiguous and overbroad, and that the interrogatory purported to be a single interrogatory, but contained multiple subparts, and sought the production of information regarding source code not in accordance with the parties' Protective Order. ECF No. 66-6, Exh. D at 4.

accused software works.[6] ECF No. 70 at 6, 11. Defendant further asserts that responding to the interrogatory would be unduly burdensome because it would require "tak[ing] multiple engineers, who assisted in creating design documentation and writing source code, away from their internal engineering tasks and hav[ing] them spend time creating a document for this litigation." Id. at 12. Defendant argues that its reliance on Fed. R. Civ. P. 33(d) is warranted and asks the Court to deny Plaintiff's motion. Id. at 12-13.

In its reply, Plaintiff acknowledges that Defendant "has produced some source code; that the code files have file names; that those files are stored in an intricate system of nested electronic folders that themselves have names; and that [Plaintiff] has been given tools for code review." ECF No. 82 at 6. Plaintiff argues, however, that the materials referred to by Defendant "do not describe particular source code files or in any way explain how to find the source code that performs the functions described." Id. at 7. Plaintiff reasserts its contention that Defendant's reliance on Fed. R. Civ. P. 33(d) is misplaced, because Defendant fails to show that its burden of deriving or ascertaining the answer will be substantially the same as the burden faced by Plaintiff. Id. at 7.

Fed. R. Civ. P. 33(d) provides the following:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and *if the burden of deriving or ascertaining the answer will be substantially the same for either party*, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

---

[6] Defendant claims that it already provided the following information: the actual source code for the accused software (including the file folder structure for its source code, which serves as a table of contents for the code, and descriptive filenames and variables for different pieces of the code); special analytical software tools for reviewing the source code; hundreds of pages of design documentation describing the operation of the software; narrative responses to Plaintiff's interrogatories explaining how the software works; and working verison of its WorkCenter Total Loss product that could be used to further understand the operation of the software. See ECF No. 70 at 6, 11; see also ECF No. 70-2, Declaration of Mario Moore ("Moore Decl.") at 2-3; ECF No. 70-3, Exhs. 4, 6-7.

Fed. R. Civ. P. 33(d) (emphasis added). A party's reliance on Fed. R. Civ. P. 33(d) is warranted "only if the burden of ascertaining the answer to the interrogatory is substantially the same for both parties." Facedouble, Inc., 2014 WL 585868, at *2 (citing Fed. R. Civ. P. 33(d)).

In Facedouble, Plaintiff's interrogatory asked Defendant for a narrative description of the steps by which the accused technology operated. Id. Defendant relied on Fed. R. Civ. P. 33(d) claiming that it sufficiently answered the interrogatory by providing a copy of its source code. Id. The Court found that Defendant's reliance on Fed. R. Civ. P. 33(d) was misplaced, because Plaintiff's burden in "determining how Defendant's software work[ed] by examining Defendant's source code" was "substantially greater" than Defendant's, reasoning that "engineers employed by Defendant wrote the code with an object in mind." Id. The Court ordered Defendant to answer the interrogatory by providing a "guide or a road map to its source code . . . [which] may be narrative . . . an index or . . . something akin to a detailed table of contents" referencing "appropriate sections of the source code." Id.

In this case, Interrogatory No. 8 requests Defendant to identify documents, including relevant source code excerpts, that describe the operation of certain identified features and functionalities of the accused products. ECF No. 66-6, Exh. D at 13-14. Just as Plaintiff in Facedouble, Inc. faced a "substantially greater" burden than Defendant in determining how Defendant's software operated, in this case, Plaintiff will face a significant burden in having to learn the functionality of Defendant's products and understand the structure of Defendant's source code. See Facedouble, Inc., 2014 WL 585868, at *2. The Court finds that Defendant's engineers who assisted in creating design documentation and wrote the source code at issue in this case, are better equipped to provide the requested information. See id.; see also Laserdynamics, Inc., 2009 WL 153161, at *2 ("The interrogatories are directed to the functionality of the defendants' own products. It is implausible for the defendants to contend that the plaintiff stands on equal footing when it comes to determining how the defendants' own products operate."); Pers. Audio, LLC v. Apple, Inc.,

2010 WL 9499679, at *3 (E.D. Tex. June 1, 2010) ("Even assuming [Plaintiff] has the same access to source code that [Defendant] does, [Defendant], as the owner and producer of the accused products, remains in a better position to answer these interrogatories.").

Defendant already has provided certain documents and narrative responses describing the operation of the accused software, as well as a working demonstration version of the software. See supra note 6. However, because Plaintiff's interrogatory is seeking specific references to the relevant sections of Defendant's source code describing the operation of particular features and functionalities of the accused products, Defendant needs to supplement its response to Interrogatory No. 8 by providing the requested source code citations. See Facedouble, Inc., 2014 WL 585868, at *2; see also Laserdynamics, Inc. v. Asus Computer Int'l, 2009 WL 153161, at *3 (E.D. Tex. Jan. 21, 2009) (ordering identification of "requested source code functionality with specificity" where defendant provided a narrative interrogatory response but failed to identify source code page and line numbers).  Accordingly, the Court **GRANTS** Plaintiff's motion to compel a supplemental response to Interrogatory No. 8 and requires Defendant to identify the relevant source code.

### C. Interrogatory No. 15 and RFPs Nos. 34-38

Plaintiff's Requests for Production ("RFPs") Nos. 34-38[7] and Interrogatory No. 15[8]

---

[7] Plaintiff's RFPs Nos. 34-38 seek the following:

RFP No. 34: "Annual statements from 2006 to the present for Mitchell, including detailed profit and loss statements, detailed balance sheet statements, and detailed cash flow statements." ECF No. 66-11, Exh. I at 13.

RFP No. 35: "Documents sufficient to show monthly, quarterly and annual sales of the Mitchell accused products and services" which include the following data: "(a) the number of units sold in the United States, net of product return; (b) the gross revenue from those sales; (c) the gross profit from the sales of the accused products; (d) the net operating profits from those sales; and (e) the category and amount of deduction required to reconcile total revenue and net profit and net operating profit." Id.

RFP No. 36: "Documents sufficient to show monthly, quarterly and annual sales of complimentary, peripheral and add-on products sold in conjunction with the accused products and services," including the following: "(a) the number of units sold in the United States, net of returns; (b) the gross revenue from those sales; (c) the net operating profit from those sales; and (d) the category and amount of deduction required to reconcile total revenue and net profit and net operating profit." Id.

request production and identification of sales and financial documents related to the accused products. See ECF No. 66-11, Exh. I at 13; ECF No. 66-7, Exh. E at 3-9. In its second supplemental response, Defendant objected to the interrogatory on a number of grounds and then relying on Fed. R. Civ. P. 33(d), designated specific documents listing revenue for the "instrumentalities accused of infringement," and identified a certain "individual most knowledgeable regarding financial data relating to sales of the accused WorkCenter and UltraMate products." ECF No. 66-7, Exh. E at 3-4.

Plaintiff alleges that Defendant "refused to provide or identify *any* sales data for the WorkCenter product suite as a whole, or pertaining to any of the WorkCenter modules other than the Total Loss module," for which it provided minimal sales information. See ECF No. 66-1 at 12 (emphasis in original); see also ECF No. 66-11, Exh. I at 3; ECF No. 66-7, Exh. E at 3-4. Plaintiff claims that because it has named and accused the entire WorkCenter product suite, its infringement case against WorkCenter is not limited to any particular module. See ECF No. 66-1 at 5, 12; see also ECF No. 66-3, Exh. A at 3; ECF No. 66-4, Exh. B at 5-6; see generally ECF No. 66, Exhs. H, J, and K.[9] Plaintiff thus asserts that because the entire WorkCenter product is accused, the sales data for the entire product

---

[RFP No. 37: "Documents sufficient to show total development costs, annual marketing costs, annual per-unit production costs, and annual and per-unit sales costs for the accused products and services." Id.]

[8] Plaintiff cites Exhibit E, attached to its Motion to Compel, as the exhibit containing Interrogatory No. 15. See ECF No. 66-1 at 12; see also ECF No. 66-7, Exh. E at 2. However, the section headings in Exhibit E reference Interrogatory "No. 1," not Interrogatory "No. 15." See id. at 3. Given the content of the interrogatory provided in Exhibit E and Plaintiff's citation to Exhibit E as the exhibit containing Interrogatory No. 15, the Court assumes that Exhibit E contains Interrogatory No. 15. The interrogatory requests the following: "Identify and describe in detail documents and other evidence, including the identity of the person or persons with the best knowledge thereof, sufficient to show monthly, quarterly and annual sales of the Mitchell accused products and services, including (a) the number of units sold in the United States, net of product return; (b) the gross revenue from these sales; (c) the gross profit from the sales of the accused products; (d) the net operating profit from those sales; and (e) the category and amount of deduction required to reconcile total revenue and net profit and net operating profit." ECF No. 66-7, Exh. E at 3.

[9] Plaintiff also asserts that financial information for the entire WorkCenetr product suite is relevant and discoverable under the "conveyed sales" damages theory, which "permits infringement damages based on instrumentalities that do not themselves infringe but are integrated with or otherwise related to an accused product." ECF No. 66-1 at 5; see also id. at 13; ECF No. 82 at 9-10. Plaintiff maintains that the information that has been produced establishes that the Total Loss module is a functional component of the WorkCenter product suite, and that Defendant "holds it out to the public as being so." ECF No. 66-1 at 14; see also ECF No. 66-15, Exh. M at 2-3.

is relevant and should be produced. ECF No. 66-1 at 13.

Defendant objects to Plaintiff's Interrogatory No. 15 and RFPs Nos. 34-38 by asserting that it has produced relevant financial information for the Total Loss module, which it asserts is "the one properly accused WorkCenter module in this case." ECF No. 70 at 15; ECF No. 70-1, Declaration of Paul Rosenstein ("Rosenstein Decl.") at 2. Defendant claims that "other than [providing] a passing reference to 'WorkCenter,' [Plaintiff] specifically identified accused functionality in the WorkCenter Total Loss software." ECF No. 70 at 13. Defendant further argues that Plaintiff disclosed that it was seeking damages under a lost profits theory, thereby limiting its damages case.[10] See id. at 14; ECF No. 70-3, Exh. 9 at 858-59. Defendant thus requests the Court to deny Plaintiff's motion to compel discovery of Defendant's financial information and sales data for the entire WorkCenter product. ECF No. 70 at 16.

Plaintiff replies that because it has consistently identified "WorkCenter" as the accused product throughout the entire case, contrary to Defendant's assertions, it made more than a "passing reference" to the product. ECF No. 82 at 9. Plaintiff also contends that the only reference to "Total Loss" in its supplemental Patent L.R. 3.1(b) disclosures provides a clarification that "the accused WorkCenter instrumentality is **not** limited to 'Total Loss,' but also includes (for example) the 'Mitchell Estimating' functionality." Id. (emphasis in original). Plaintiff also addresses Defendant's argument that Plaintiff's damages case is solely directed to lost profits by referencing its original response stating that Plaintiff was seeking "damages which in no event shall be less than a reasonable royalty," and alleges that because parties often proceed to trial on both lost profits and reasonable royalty theories, the requested information is relevant. Id. at 10 (citing Positive Tech., Inc. v. Sony Elec., 2013 WL 707914, at *3-6 (N.D. Cal. Feb. 26, 2013)).

In its initial and amended complaints, Plaintiff asserted infringement by Defendant

---

[10] Defendant argues that sales of other WorkCenter modules do not constitute "conveyed sales" because the WorkCenter Total Loss software is a functional stand-alone item that is sold by itself, though it can also be purchased together with other WorkCenter modules, and because other WorkCenter modules are not required for the Total Loss module to function. ECF No. 70 at 14; Rosenstein Decl. at 2.

through the manufacture, use, and sale and/or offer for sale of products, including "Mitchell's 'WorkCenter' software and related services." ECF No. 1 at 2; ECF No. 12 at 3. Additionally, Plaintiff's initial patent disclosures identified "WorkCenter" as an accused product pursuant to Patent L. R. 3.1(b). ECF No. 66-3, Exh. A at 4 ("Audatex asserts infringement of every claim identified in its response to Patent L.R. 3.1(a) above (collectively, the 'Asserted Claims') by the Mitchell Accused Products, including, without limitation, Mitchell's 'UltraMate' and 'WorkCenter' products (the 'Accused Products') and related products and services sold by Mitchell."). Plaintiff's amended infringement contentions again identified "WorkCenter" as an accused product. ECF No. 66-4, Exh. B at 5-6 ("Audatex asserts infringement of every claim identified in its response to Patent L.R. 3.1(a) above, collectively, the 'Asserted Claims') by the Mitchell Accused Products, which include, without limitation, Mitchell's 'WorkCenter' product suite–which features, among other things, the 'WorkCenter Total Loss' and 'UltraMate' (also known as 'Mitchell Estimating') products – and other related products and services sold by Mitchell."). Further, Plaintiff reiterated that it named Defendant's entire WorkCenter suite as an accused product in its correspondence with Defendant. See ECF No. 66-10, Exh. H at 4 (containing Plaintiff's letter to defense counsel stating "[a]lthough you indicated on our call that you had previously believed that Audatex was requesting damages information only for the WorkCenter Total Loss functionality, we have in fact repeatedly emphasized that this is not the case, including during the May 5th in-person meet-and-confer, as well as in subsequent correspondence . . . ."); see also ECF No. 66-12, Exh. J. As such, Plaintiff named and accused the entire WorkCenter product suite in its pleadings and infringement contentions, and reiterated this point in correspondence with the opposing counsel. See ECF No. 1 at 2; ECF No. 12 at 3; ECF No. 66-4, Exh. B at 5-6; ECF No. 66-10, Exh. H at 4; ECF No. 66-12, Exh. J.

Because the entire WorkCenter product is accused in this case, the requested financial information for the entire WorkCenter product suite is relevant to the issue of damages and is reasonably calculated to lead to the discovery of admissible evidence. See

Fed. R. Civ. P. 26(b)(1) (allowing discovery of any non-privileged matter that is relevant to any party's claim); see also 3 Com Corp. v. D-Link Systems, Inc., 2007 WL 949596, at *3 (N.D. Cal. Mar. 27, 2007) (finding that "all worldwide sales and profits of all the accused products [were] within the scope of discovery."). Although Defendant designated certain documents listing revenues for the "instrumentalities accused of infringement" in its response to Interrogatory No. 15, Plaintiff indicates in its motion to compel that such documents are limited to Defendant's Total Loss module. See ECF No. 66-7, Exh. E at 4; ECF No. 66-1 at 12. Defendant does not present any contradictory evidence. See ECF No. 70. Accordingly, the Court **GRANTS** Plaintiff's motion and **ORDERS** Defendant to supplement its responses to Plaintiff's Interrogatory No. 15 and RFPs Nos. 34-38 by providing the requested financial information and sales data for Defendant's entire WorkCenter product.

### D. Request to Award Plaintiff's Costs and Attorney's Fees Incurred in Connection with this Motion.

Plaintiff requests the Court to award its costs and attorney's fees incurred in connection with this motion. ECF No. 66 at 15. Federal Rule of Civil Procedure 37 states that when a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, the court "must not order this payment if . . . the opposing party's nondisclosure, response, or objection was substantially justified." Id. Here, Defendant provided substantial information in response to the challenged interrogatories and RFPs. So, while the Court is requiring supplemental responses, the Court also finds that Defendant's responses to Plaintiff's discovery requests were substantially justified and therefore **DENIES** Plaintiff's motion to recover its costs and reasonable attorney's fees.

///

///

///

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel discovery from Defendant is **GRANTED** to the extent set forth above. Defendant is ordered to provide the required supplemental responses to Plaintiff's Interrogatories Nos. 1, 8 and 15 and produce documents requested in RFPs 34-38 by **October 17, 2014**.

**IT IS SO ORDERED.**

DATED: October 3, 2014

*Barbara L. Major*

BARBARA L. MAJOR
United States Magistrate Judge