1  MORGAN, LEWIS & BOCKIUS LLP
   Lorraine M. Casto (SBN 238154)
2  lcasto@morganlewis.com
   One Market, Spear Street Tower
3  San Francisco, CA  94105
   Tel.:  415.442.1000
4  Fax:   415.442.1001

5  MORGAN, LEWIS & BOCKIUS, LLP
   Jason C. White (admitted *Pro Hac Vice*)
6  jwhite@morganlewis.com
   Mansi H. Shah (SBN 244669)
7  mshah@morganlewis.com
   77 West Wacker Drive
8  Chicago, IL  60601
   Tel:   312.324.1000
9  Fax:   312.324.1001

10 Attorneys for Defendant
   Mitchell International, Inc.

11

12                  UNITED STATES DISTRICT COURT

13                SOUTHERN DISTRICT OF CALIFORNIA

14 AUDATEX NORTH AMERICA,            Case No. 3:13-cv-01523-BEN-BLM
   INC.,
15                                   **DEFENDANT MITCHELL**
                                     **INTERNATIONAL, INC.'S**
16              Plaintiff,           **MEMORANDUM OF POINTS AND**
                                     **AUTHORITIES IN SUPPORT OF**
17        vs.                        **ITS MOTION FOR SUMMARY**
                                     **JUDGMENT UNDER 35 U.S.C. § 101**
18 MITCHELL INTERNATIONAL,
   INC.,                             Date: January 5, 2015
19                                   Time: 10:30 a.m.
                Defendant.           Courtroom: 5A
20                                   Judge: Hon. Roger T. Benitez

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

                                     DEFENDANT'S MEMO OF POINTS AND
                                     AUTHORITIES ISO MOTION FOR
                                     SUMMARY JUDGMENT
                                     CASE NO. 3:13-CV-01523-BEN-BLM

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION .................................................................................................1

II.    STATEMENT OF FACTS.................................................................................3

    A.    The Patents-in-Suit.................................................................................3

    B.    The Current Litigation ..........................................................................5

III.   LEGAL STANDARD .........................................................................................7

IV.    ARGUMENT ......................................................................................................11

    A.    The Asserted Claims are Directed to Abstract Ideas ...........................11

        1.    The Claims of the Patents-in-Suit Are All Directed to the Abstract Concept of the Valuing a Damaged Vehicle Based on Information Provided About the Vehicle .................11

        2.    The Abstract Nature of the Claims of the Patents-in-Suit Is Confirmed by Their Attempt to Claim Long-Standing Basic Insurance Practices ...........................................14

    B.    The Asserted Claims Have No Transformative Elements Because Reciting the Internet or Generic Computer Components Does Not Transform the Claims ........................16

        1.    The Asserted Claims Do No More Than "Add the Internet" to an Abstract Claim.................................................17

        2.    The Asserted Claims Merely Recite Generic Computer Components .................................................................18

        3.    The Asserted Claims Also Fail the "Machine-or Transformation Test"..................................................22

V.     CONCLUSION ..............................................................................................23

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

i

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4   *Accenture Global Servs., GmbH and Accenture LLP v. Guidewire Software,*
      *Inc.,*
5     728 F.3d 1336 (Fed. Cir. 2013) ........................................................................... passim

6   *Alice Corp. Pty. Ltd. v. CLS Bank International,*
7     134 S. Ct. 2347 (2014) ....................................................................................... passim

8   *Alice Corporation v. CLS Bank.*
9     (Dkt. No. 64-1 at 1.) ................................................................................................... 5

10  *Bilski v. Kappos,*
11    561 U.S. 593, 130 S. Ct. 3218 (2010) ...................................................................... 14

12  *buySAFE, Inc. v. Google, Inc.,*
      765 F.3d 1350 (Fed. Cir. 2014) ........................................................................... passim
13

14  *CCC Info. Servs., Inc. v. MacLean Hunter Mkt. Reports, Inc.,*
      44 F.3d 61 (2d Cir. 1994) .......................................................................................... 15
15

16  *Celotex Corp. v. Catrett,*
      477 U.S. 317 (1986) .................................................................................................... 7
17

18  *Cogent Medicine, Inc. v. Elsevier Inc.,*
      Nos. C-13,4479, C-13-4483, C-13-4486, 2014 WL 4966326 (N.D. Cal.
19    Sept. 30, 2014) .................................................................................................... 11, 19

20  *CyberSource Corp. v. Retail Decisions, Inc.,*
      654 F.3d 1366 (Fed. Cir. 2011) ................................................................... 10, 18, 23
21

22  *Data Distrib. Techs., LLC, v. Brer Affiliates, Inc.,*
      No. 12-4878, 2014 WL 4162765 (D.N.J. Aug. 19, 2014) ........................................ 21
23

24  *DietGoal Innovations LLC v. Bravo Media LLC,*
      No. 13 Civ. 8391, 2014 WL 3582914 (S.D.N.Y. July 8, 2014) .............................. 21
25

26  *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.,*
      758 F.3d 1344 (Fed. Cir. 2014) ................................................................................ 21

27  *Enfish, LLC v. Microsoft Corp.,*
28    No. 2:12-cv-07360, 2014 WL 5661456 (C.D. Cal. Nov. 3, 2014) ..................... 8, 11

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

*In re Bilski*,
   545 F.3d ............................................................................................................ 10

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   No. 2:13-CV-655, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) ......................... 18

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) .............................................................................. 9, 10, 13

*NADA Servs. Corp. v. CCC Info. Servs. Inc.*,
   No. 91 C 4593, 1991 WL 287961 (N.D. Ill. Nov. 15, 1991) ................................ 15

*Open Text S.A. v. Alfresco Software Ltd.*,
   No. 13-cv-04843, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) .......................... 7

*Parker v. Flook*,
   437 U.S. 584 (1978) ....................................................................................... 16, 14

*Planet Bingo, LLC v. VKGS LLC*,
   576 Fed. Appx. 1005 (Fed. Cir. 2014) .................................................................. 7

*Ultramercial, Inc. v. Hulu, LLC*,
   722 F.3d 1335 (Fed. Cir. 2013) ................................................................... passim

*Ultramercial, Inc. v. Hulu, LLC*,
   No. 2010-1544, 2014 WL 5904902 (Fed. Cir. Nov. 14, 2014) (slip op. ) ............. 6

STATUTES

35 U.S.C. § 101 ........................................................................................... passim

OTHER AUTHORITIES

Fed. R. Civ. P. 56 .................................................................................................. 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

iii

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION TO STAY
CASE NO. 3:13-CV-01523-BEN-BLM

1    **I.    INTRODUCTION**

2           The patent claims asserted in this case all suffer from the same infirmity:

3    they are a non-transformative abstract concept and thus are directed to non-

4    patentable subject matter.  Simply put, the claims asserted by Audatex capture a

5    basic concept in the automobile insurance industry:  valuing a damaged vehicle

6    based on information provided about the vehicle.  The inventors make clear in the

7    Brief Summary of the Invention that each of the patents-in-suit is directed to

8    "entering data relating to an insurance claim for a damaged vehicle and transmitting

9    a valuation report for the damaged vehicle through the world wide web."  *See* U.S.

10   Patent Nos. 7,912,740; 8,200,513; and 8,468,038.

11          Within the last six months, decisions from the Supreme Court and the

12   Federal Circuit have clarified the requirements of 35 U.S.C. § 101 such that the

13   asserted patents now unmistakably fall outside the scope of patentable subject

14   matter and are invalid under § 101.  First, the Supreme Court's recent decision in

15   *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014) held patent

16   claims directed to abstract ideas are unpatentable unless they further include

17   elements that transform the idea into something that in practice would be

18   significantly more than a patent on the abstraction itself.  Second, in the very recent

19   November 14, 2014, *Ultramercial, Inc. v. Hulu, LLC* decision, the Federal Circuit

20   applied the Supreme Court's guidance from *Alice* and found patents claims invalid

21   under 35 U.S.C. § 101.  In doing so, the Federal Circuit confirmed that mere

22   implementation of an abstract concept using well-known computer technology,

23   such as the Internet, does not satisfy the requirements of 35 U.S.C. § 101.

24          The *Ultramercial* decision is particularly informative for at least two reasons.

25   First, in finding the claims at issue invalid under 35 U.S.C. § 101, the Federal

26   Circuit reversed its prior decision finding the same claims valid.  The reversal was a

27   direct result of the new guidance provided by the Supreme Court in *Alice*.  Second,

28   Audatex in this case explicitly compared the patents-in-suit to the now-invalid

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

1    *Ultramercial* patent when opposing Mitchell's previous motion to stay this case

2    pending the outcome of the Mitchell's CBM petitions.  At that time, Audatex

3    declared the patents-in-suit to be similar to the *Ultramercial* patents with respect to

4    the manner in which the purported inventions were claimed in the patents.

5    Specifically, Audatex stated its patents are "much more similar to the technical

6    invention found patentable in *Ultramercial*" in arguing that the case should not be

7    stayed because the Patent Office would similarly find Plaintiffs patents satisfy 35

8    U.S.C. § 101.  (Dkt. No. 81 at 2.)

9         The claims of the patents-in-suit are invalid under the two-part test

10   articulated in *Alice* and *Ultramercial*.  First, there is no doubt the process of valuing

11   a damaged vehicle is a non-patentable abstract concept.  As acknowledged on the

12   Background Information section of the patents-in-suit, there is nothing novel about

13   the process of valuing a damaged vehicle based on information provided about the

14   vehicle, which is a core insurance practice that had been carried out by adjusters for

15   decades.  Second, none of the claims of the patents-in-suit have any transformative

16   elements that elevate the subject matter of the patents to patentability.  The patent's

17   plain claim language highlights the deficiency, identifying only conventional

18   computer components in a typical network environment to create Audatex's so-

19   called "invention."  As with the similar *Ultramercial* patent, the patents-in-suit do

20   no more than take a classic abstract automobile insurance process and apply that

21   abstract idea to a basic computer system implement using the Internet.  This is not

22   sufficient to save the patents.

23        For these reasons, as set forth more fully below, Mitchell seeks summary

24   judgment that the asserted claims of the three patents-in-suit are invalid under 35

25   U.S.C. § 101.

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law

2

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

1    **II.    STATEMENT OF FACTS**

2        **A.    The Patents-in-Suit**

3        Audatex asserted three patents against Mitchell in this litigation:  U.S. Patent

4    Nos. 7,912,740 ("the '740 patent"); 8,200,513 ("the '513 patent"); and 8,468,038

5    ("the '038 patent").[1]  (*See* Supp. 1st Am. Compl. ¶¶ 8–44 (Dkt. No. 57).)  The '513

6    and '038 patents are continuations of the '740 patent.  (*See* Shah Decl., Exs. A-C.)

7    All three patents-in-suit are directed to the same alleged invention: "[a] method and

8    system for entering data relating to an insurance claim for a damaged vehicle and

9    transmitting a valuation report for the damaged vehicle through the world wide

10   web." ('740 Pat., col. 1:55-57; '513 Pat., col. 1:60-62; '038 Pat., col. 1:65-67).

11   The specifications for all three patents-in-suit are identical.

12       Each patent-in-suit contains four independent claims: (1) a claim directed to

13   a method; (2) a claim directed to a system; (3) a claim directed to a "server;" and

14   (4) a claim directed to a "computer program storage medium."  (*See, e.g.*, '740 Pat.,

15   cl. 1, 10, 18, 24.)[2]  The "system," "server," and "computer program storage

16   medium" independent claims in each patent-in-suit are virtually identical to the

17   method claim and only add generic computer and networking components to

18   implement the independent method claim.  For example, in the '740 patent, the

19   system claim (10) describes an "electronic communication network," a "web

20   server," a "web site" with "web pages," and a "client computer" that allow for

21   implementation of the method described in Claim 1.  '740 Pat., col. 4:62-5:8.

22   Similarly, the "server" claim (18), describes a server with a "memory device," "a

23

24   ───────────

[1] This briefing will refer to all three patents collectively as the "patents-in-suit."
25   The patents-in-suit are attached to the accompanying Declaration of Mansi Shah
     ("Shah Decl.") as Exhibit A ('740 patent), Exhibit B ('513 patent), and Exhibit C
26   ('038 patent).

27   [2] The corresponding claims for the '513 and '038 patents are claims 1 (method); 10
28   (system); 18 (server); and 25 (storage medium).

Morgan, Lewis &
Bockius LLP
Attorneys At Law

3

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

communication port," and "a processor," that implement the method claim. *Id.*, col. 5:27-6:2.  Finally, the "computer program storage medium" claim simply describes a computer program that implements the method claim. *Id.*, col. 6:14-24.

When the generic computer components are removed, each of the remaining independent claims read like the method claims.  For the Court's convenience and reference, a further comparison of the claims of the patents-in-suit is attached hereto to the Declaration of Mansi Shah as Exhibit D, demonstrating that the modifications of each independent claim from patent to patent are small and inconsequential for Section 101 analysis (showing the generic computer components in gray with the remaining language in yellow).  Furthermore, the differences between the corresponding independent claims in each of the patents-in-suit are minor.  For example, from the '740 patent to the '513 patent, Claim 1 essentially changes the nomenclature of the claim from "transmitting" to "receiving."  The changes from the '513 patent to the '038 patent are even smaller, mostly adding limitations regarding the type of data used.

Each independent claim is followed by a number of dependent claims.  Many of the dependent claims describe limitations related to the type of data used, such as claim 3 of the '513 patent, which describes "[t]he method of claim 1, wherein the data includes aftermarket equipment that is used to generate the valuation report," or claim 2 of the '038 patent, which describes "[t]he method of claim 1, wherein the data includes a vehicle engine size."[3]  Some describe the data being input by a user of the system such as claim 4 of the '740 patent, which describes "[t]he method of claim 1, wherein the web pages allow for input of a vehicle option," or claim 13 of the '513 patent, which describes "[t]he system of claim 10, wherein said web server

---

[3] For the '740 patent, the following dependent claims consist of such data limitations:  3-6, 13-16, 19-22, and 25-28.  These "data" claims in the '513 patent are claims 3-6, 13-16, 19-22, and 26-29.  In the '038 patent they consist of claims 2-6, 9, 12-17, 19-24, and 26-31.

Morgan, Lewis &
Bockius LLP
Attorneys At Law

4

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

web site allows for input of aftermarket equipment that is used to generate said valuation report." Both sets of dependent claims describe the type of data used or input in generating a valuation report. A smaller number of dependent claims describe limitations on the transmission of a valuation report, such as claims 8 and 9 of the '740 patent.[4] Two other dependent claims describe limitations describing servers that process data. *See* '740 patent, claim 11; '513 patent, claim 11. The remaining dependent claims also include a limitation relating to processing data using an "original equipment guide database." *See, e.g.*, '740 patent, claim 2.[5] A chart grouping the claims into these categories demonstrates their similarity from patent to patent. *See* Ex. D to Shah Decl.

### B.    The Current Litigation

Audatex originally brought this lawsuit in the United States District Court for the District of Delaware on February 6, 2012, alleging infringement of the '740 patent. *See* Dkt. No. 1. Audatex subsequently amended its Complaint twice to add the '513 and '038 patents. (Dkt. Nos. 12, 57.) Currently, Audatex alleges that Mitchell has infringed every claim of the patents-in-suit.

On August 11, 2014, Mitchell filed three Covered Business Method petitions with the United States Patent and Trademark Office that challenged the validity of every claim of the three patents-in-suit, including on the grounds that the patents were directed to unpatentable subject matter under 35 U.S.C. § 101 and under the Supreme Court's June 19, 2014, decision in *Alice Corporation v. CLS Bank*. (Dkt. No. 64-1 at 1.) The three CBM petitions remain pending, Audatex's

---

[4] The following claims are directed to such transmission limitations: claims 7-9, 17, 23, and 29 of the '740 patent; claims 7-9, 17, 23, and 30 of the '513 patent; and claims 7-8 of the '038 patent.

[5] The following claims are directed to such OEM limitations: claims 2 and 12 of the '740 patent; and claims 2, 12, 24, and 31 of the '513 patent.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

5

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

1    preliminary response was just filed on November 26, and a decision by the PTAB is

2    required no later than the end of February 2015.

3        Shortly after filing the CBM petitions, Mitchell moved for a stay of this

4    litigation pending the outcome of the CBM proceedings given the likelihood of

5    their institution.  (Dkt. No. 64.)  Audatex opposed the motion to stay and discussed

6    the merits of the Section 101 argument against the patents-in-suit in its briefing,

7    which the Court relied on when denying Mitchell's motion to stay.  (Dkt. No. 72 at

8    10-11.)  Specifically, Audatex stated the alleged inventions of the patents-in-suit

9    were "much more similar to the technical invention found patentable in

10   *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1354 (Fed. Cir. 2013)."  (Dkt.

11   No. 81 at 2).[6]  On November 14, 2014, the Federal Circuit reversed its decision in

12   the *Ultramercial* case and found the patent at issue in that case was "directed to no

13   more than a patent-ineligible abstract idea" and affirmed the district court's holding

14   that the patent did not claim patent-eligible subject matter.  *Ultramercial, Inc. v.*

15   *Hulu, LLC*, No. 2010-1544, 2014 WL 5904902, at *6 (Fed. Cir. Nov. 14, 2014)

16   (slip op. at 13-14).[7]  Audatex's November 26 responses to the CBM petitions serves

17   to confirm the lack of patentability of with respect to the asserted patents.  Instead

18   of distinguishing its patents from the Federal Circuit's recent *Ultramercial*

19   decision, Audatex remained silent.

20       Pursuant to the precedent established by *Ultramercial*, the Supreme Court's

21   *Alice* decision, and other applicable authority, Mitchell now respectfully moves this

22   Court for summary judgment that the claims of the patents-in-suit are directed to

23

24   _____

     [6] Dkt. No. 81 corrected errata from Audatex's original brief in opposition, including

25   errors to the citation of the *Ultramercial* case.  The original quote and citation
     appear on page 11 of Dkt. No. 72.

26
     [7] For the Court's convenience and reference, the slip opinion of the Federal

27   Circuit's decision is attached to the accompanying Declaration of Mansi Shah
     ("Shah Decl.") as Exhibit E and will be cited throughout this brief.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

1   non-patentable subject matter under 35 U.S.C. § 101 and that the patents-in-suit are

2   invalid.

## III.   LEGAL STANDARD

4           Summary judgment should be granted when there is no genuine issue as to

5   any material fact, as supported by facts on the record that would be admissible in

6   evidence, and if the moving party is entitled to judgment as a matter of law.  Fed.

7   R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Ineligibility

8   under Section 101 is a question of law.  *Accenture Global Servs., GmbH and*

9   *Accenture LLP v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir.

10  2013); *see also Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843, 2014

11  WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014) ("The issue of invalidity under

12  Section 101 . . . presents a question of law.").  Many courts have reviewed and

13  granted motions for summary judgment under Section 101.  *See, e.g.*, *Planet Bingo,*

14  *LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1006 (Fed. Cir. 2014) (affirming

15  summary judgment of invalidity); *Accenture*, 728 F.3d at 1346 (affirming grant of

16  summary judgment of invalidity under Section 101).

17          Section 101 of the Patent Act defines patentable subject matter: "Whoever

18  invents or discovers any new and useful process, machine, manufacture, or

19  composition of matter, or any new and useful improvement thereof, may obtain a

20  patent therefor, subject to the conditions and requirements of this title." 35 U.S.C.

21  § 101.  For more than 100 years, the Supreme Court has consistently held that those

22  categories do not authorize patents on "laws of nature, natural phenomena, and

23  abstract ideas," no matter how groundbreaking, innovative, or even brilliant.

24  *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014); *see also Alice*

25  *Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).  "Laws of nature,

26  natural phenomena, and abstract ideas" are the core building blocks of all scientific

27  and technologic work and progress.  *Alice*, 134 S. Ct. at 2354.  Permitting patents to

28  exclude access to such fundamental concepts (even when newly discovered

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

7

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

1   applications are involved) would impede innovation, rather than promote it,

2   thwarting the primary purpose of patent laws.  *Id.*

3        The *Alice* decision set forth a two-part framework for assessing whether a

4   patent satisfies the strictures of Section 101.  First, the court determines whether a

5   challenged claim is directed to "one of those patent-ineligible concepts"—in other

6   words, a law of nature, a natural phenomena, or an abstract idea.  *Alice*, 134 S. Ct.

7   at 2355.  "To do so, the court must identify the purpose of the claim—in other

8   words, determine what the claimed invention is trying to achieve—and ask whether

9   that purpose is abstract."  *Enfish, LLC v. Microsoft Corp.*, No. 2:12-cv-07360, 2014

10  WL 5661456, at *4 (C.D. Cal. Nov. 3, 2014) (granting motion for summary

11  judgment under § 101).  Applying the *Alice* decision, the Federal Circuit

12  emphasized in *Ultramercial* that the addition of merely novel or non-routine

13  components to a claimed idea does not "necessarily turn[] an abstraction into

14  something concrete."  *Ultramercial*, slip op. at 10.  Although the Supreme Court

15  did not explicitly "delimit the precise contours of the 'abstract ideas' category," 134

16  S. Ct. at 2357, *Alice* teaches that longstanding, fundamental commercial practices

17  are abstract ideas within the meaning of Section 101, *id.* at 2356.

18       Second, if the patent is directed to one of the ineligible concepts, the court

19  considers the claim elements individually and as an ordered combination to

20  determine whether the additional elements "'transform the nature of the claim' into

21  a patent-eligible application.'"  *Id.* at 2355.  The additional elements must supply an

22  "'inventive concept' in the physical realm of things and acts" to ensure that "the

23  patent is on something 'significantly more than' the ineligible matter itself."

24  *buySAFE, Inc.*, 765 F.3d at 1353 (quoting *Alice*, 134 Sup. Ct. at 2355, 2357).  In

25  other words, the Federal Circuit's recent *Ultramercial* opinion explained:

26       The transformation of an abstract idea into patent-eligible subject
27       matter requires more than simply stat[ing] the [abstract idea] while
         adding the words "apply it."  A claim that recites an abstract idea must
28       include additional features to ensure that the [claim] is more than a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

8

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

drafting effort designed to monopolize the [abstract idea].  Those
additional features must be more than well-understood, routine,
conventional activity.

*Ultramercial*, slip op. at 10 (internal quotation marks and citations omitted).  The
Supreme Court specifically disapproved of claims that did not "purport to improve
the functioning of the computer itself" or "effect an improvement in any other
technology or technical field."  *Alice*, 134 S. Ct. at 2359.  A complicated patent
specification also will not serve to save the claims, as "the complexity of the
implementing software or the level of detail in the specification does not transform
a claim reciting only an abstract concept into a patent-eligible system or method."
*Accenture*, 728 F.3d at 1345.

     For a patent to survive step two of the *Alice* analysis, the patent must recite
more than use of the Internet.  In *Ultramercial*, the Federal Circuit made clear that
"use of the Internet does not transform an otherwise abstract idea into patent-
eligible subject matter."  *Ultramercial*, slip op. at 11.  Furthermore, "[g]iven the
prevalence of the Internet, implementation of an abstract idea on the Internet in this
case is not sufficient to provide any 'practical assurance that the process is more
than a drafting effort designed to monopolize the [abstract idea] itself.'"  *Id.*, slip
op. at 12 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct.
1289, 1297 (2012)).  Thus, "the use of the Internet is not sufficient to save
otherwise abstract claims from ineligibility under § 101."  *Id.*, slip op. at 11; *see
also buySAFE, Inc.*, 765 F.3d at 1355 ("That a computer receives and sends the
information over a network—with no further specification—is not even arguably
inventive.").

     Similarly, a patent that recites generic computer components or functionality
also fails step two of *Alice*.  In *Alice*, the Supreme Court stated that "merely
requiring generic computer implementation fails to transform [an] abstract idea into
a patent-eligible invention."  *Alice*, 134 S. Ct. at 2352.  If the process can be carried

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

9

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

1  out in "existing computers long in use" or if the references to particular computer

2  functions are merely conventional, no inventive transformation takes place.  *Id.* at

3  2357, 2360 (noting that "communications controller" and "data storage unit" were

4  generic computing functions); *see also CyberSource Corp. v. Retail Decisions, Inc.*,

5  654 F.3d 1366, 1373-74 (Fed. Cir. 2011) ("computer readable medium" and

6  "program instructions" were generic and non-transformative).

7       Additionally, applying what has been referred to as the machine-or-

8  transformation test can be informative as to whether step two of the *Alice* test is

9  satisfied: "[w]hile the Supreme Court has held that the machine-or-transformation

10  test is not the sole test governing § 101 analyses . . . that test can provide a 'useful

11  clue' in the second step of the *Alice* framework."  *Ultramercial*, slip op. at 12.  The

12  *Ultramercial* court described this test as:  "[a] claimed process [can] be 'patent-

13  eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it

14  transforms a particular article into a different state or thing.'"  *Id.* at 1369 (quoting

15  *In re Bilski*, 545 F.3d at 954).  Under this test, use of the Internet is not sufficient to

16  tie the process to a particular machine or transform an article because "[i]t is a

17  ubiquitous information-transmitting medium, not a novel machine.  And adding a

18  computer to otherwise conventional steps does not make an invention patent-

19  eligible."  *Id.*, slip op. at 12-13.  Furthermore, "[a]ny transformation from the use of

20  computers or the transfer of content between computers is merely what computers

21  do and does not change the analysis."  *Id.*, slip op. at 13.

22       Finally, it is important to note that where the method and non-method claims

23  in a patent contain only minor differences in terminology but require performance

24  of the same basic process, they rise or fall together.  *See Accenture*, 728 F.3d at

25  1344; *Mayo*, 132 S. Ct. at 1291.  For example, in *Alice*, the system claims were "no

26  different from the method claims in substance" because the system claims only

27  "recite a handful of generic computer components configured to implement the

28  same idea."  *Alice*, 134 S. Ct. at 2360.  Because the *Alice* system and media claims

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

10

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

1  added nothing of substance to the underlying abstract idea, the Supreme Court held

2  that they were also patent ineligible.  *Id.*; *see also Cogent Medicine, Inc. v. Elsevier*

3  *Inc.*, Nos. C-13,4479, C-13-4483, C-13-4486, 2014 WL 4966326, at *6 (N.D. Cal.

4  Sept. 30, 2014) (finding that the "system and computer component claims rise and

5  fall with the method claims" because "'the system claims are no different from the

6  method claims in substance.  The method claims recite the abstract idea

7  implemented on a generic computer; the system claims recite a handful of generic

8  computer components configured to implement the same idea.'") (quoting *Alice*,

9  134 S. Ct. at 2360).

10  **IV.   ARGUMENT**

11      All of the claims in the patents-in-suit recite abstract ideas that are not patent

12  eligible.  Because the claims also fail to recite any limitations that transform the

13  nature of the claims, all of the claims are invalid under 35 U.S.C. § 101.

14      **A.    The Asserted Claims are Directed to Abstract Ideas**

15      The first step in the *Alice* analysis is whether the claims of the patents-in-suit

16  constitute an abstract idea.  *See Ultramercial*, slip op. at 9-10 (finding claims

17  directed "showing an advertisement before delivering free content" are abstract).

18  For this step, a court must determine what the claimed invention is trying to achieve

19  and determine if its purpose is abstract.  *See Enfish*, 2014 WL 5662456, at *4.

20  Here, all of the claims of the patents-in-suit are directed to the simple, abstract idea

21  of valuing a damaged vehicle based on information provided about the vehicle.

22      **1.    The Claims of the Patents-in-Suit Are All Directed to the**

23           **Abstract Concept of Valuing a Damaged Vehicle Based on**

24           **Information Provided About the Vehicle**

25      As an initial matter, the common specification for the patents-in-suit

26  demonstrates that the claims of the patents are directed to no more than an abstract

27  idea being implemented via an Internet website.  For example:

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

11

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

- The "Field of the Invention" describes the disclosed subject matter as relating to "a method and system for entering data relating to an insurance claim for a damaged vehicle.  The data is processed into a valuation report that *is transmitted through the world wide web*."  '740 Pat., col. 1:8-11 (emphasis added); *see also* '513 Pat., col. 1:14-17; '038 Pat., col. 1:18-21.

- The "Brief Summary of the Invention" describes "[a] method and system for entering data relating to an insurance claim for a damaged vehicle and transmitting a valuation report for the damaged vehicle *through the world wide web*."  '740 Pat., col. 1:55-57 (emphasis added); *see also* '513 Pat., col. 1:60-62; '038 Pat., col. 1:65-67.

Audatex itself has acknowledged the abstract nature of the claims in its own claim construction briefing, stating that "all of the claims relate at a general level to improved methods and systems for receiving and processing insurance claim data in a manner that will facilitate the generation and use of what is known as a vehicle 'valuation report.'"  (Dkt. No. 80 at 3.)  Audatex's recently filed responses to Mitchell's CBM petitions also demonstrate that the patents-in-suit are directed to an abstract concept.  Audatex characterizes the patents-in-suit by stating that they "are directed to a method, system, etc. for obtaining a valuation report, not generating the vehicle valuation."  (Shah Decl. Ex. F at 20; *see also* Shah Decl. Ex. G at 20; Shah Decl. Ex. H at 20.)  Of course, whether the patents are directed to "obtaining" or "generating" a valuation makes no difference because ***both*** of these activities are abstract ideas and are two sides of the same coin.

The claims of the patents-in-suit take the general abstract idea of valuing a damaged vehicle based on information provided about the vehicle and break it out step-by-step using generic computer and Internet terminology.  For example, claim 1 of the '740 patent describes five steps for a user inputting information regarding a damaged vehicle into a webpage and subsequently receiving a valuation for that vehicle.  These steps consist of: (1) sending a URL and (2) connecting with a web

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

12

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

site where (3) a user inputs information related to a damaged vehicle and (4) that information is processed into a valuation report for the vehicle that is (5) transmitted back to the user. '740 Pat., col. 4:29-42. Claim 1 of the '513 patent and claim 1 of the '038 patent, although they use slightly different language, describe the same abstract concept and steps. '513 Pat., col. 4:36-49; '038 Pat., col. 4:38-53.

As discussed above, all of the other independent claims simply recite that the functional aspects of the method claims are performed using a generic system, a generic server, or a generic computer program storage medium. As a result, the system, server, and computer program claims describe the same basic abstract idea as the method claims. *See Accenture*, 728 F.3d at 1344 ("Because the system claim and [the] method claim contain only 'minor differences in terminology [but] require performance of the same basic process,' they should rise or fall together.") (quoting *Mayo*, 132 S. Ct. at 1291) (internal citation omitted).

Similarly, all of the dependent claims of the patents-in-suit describe the basic abstract concept of valuing a damaged vehicle based on information provided about the vehicle and add nothing else to remove the patents from being an abstract idea. For example, claims 3-6 of the '740 patent recite web pages that allow for the input of "aftermarket equipment," "a vehicle option," "a vehicle condition," and a "vehicle identification number." '740 Pat., col. 4:45-53. These claims further demonstrate that the patents-in-suit are directed to collecting information about a damaged vehicle that is then used to calculate the vehicle's value and thus all of the claims should rise or fall together.

As with the patent in *Ultramercial*, which Audatex admitted and argued is similar to the patents-in-suit, the ordered combination of steps recited in the method claims of the patents-in-suit recite "an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, slip op. at 9. Although the patents-in-suit are drafted to include generic Internet-based technology in the claims, and in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

13

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

some instances identify the type information collected or how the valuation is presented, the concept embodied by the limitations describes only the abstract idea of valuing a damaged vehicle based on information provided about the vehicle. *See id.*, slip op. at 9-10 ("Although certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content.").  As a result, the claims of the patents-in-suit recite abstract ideas that are not patent eligible.

### 2. The Abstract Nature of the Claims of the Patents-in-Suit Is Confirmed by Their Attempt to Claim Long-Standing Basic Insurance Practices

Claims drawn to long-standing, wide-spread basic practices are too abstract to patent.  The patent in *Alice*[8] was directed to using a computer as a neutral intermediary to reduce the risk of effecting a settlement.  134 S. Ct. at 2357.  The Supreme Court found that, because intermediated settlement is wide-spread and long-standing in stock and commodity exchanges (among other institutions), the claim, even though long and complex, was directed to "an 'abstract idea' beyond the scope of § 101."  *Id.* at 2356.  Given its focus on a fundamental practice, the claim in *Alice* was like the claim in *Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218 (2010), which although lengthy, was ultimately directed to using a computer to hedge against the risk of price fluctuations.  The *Bilksi* court noted that the concept of hedging is "long prevalent in our system of commerce and taught in any introductory finance class" and was therefore a patent-ineligible "abstract idea, just like the algorithms at issue in *Benson* and *Flook*."  *Bilski*, 130 S. Ct. at 3222; *see*

---

[8] Although *Alice* did not explicitly "delimit the precise contours of the 'abstract ideas' category," the Supreme Court confirmed that the patent claims before it were drawn to an abstract idea by comparing them to earlier precedents.  134 S. Ct. at 2357.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

14

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

1    *also buySAFE, Inc.*, 765 F.3d at 1354-55 (finding an abstract idea when "[t]he

2    claims are squarely about creating a contractual relationship . . . that is beyond

3    question of ancient lineage").

4         Here, the claims of the patents-in-suit are similarly are drawn to wide-spread,

5    long-standing practices of the insurance industry.  Determining the market value of

6    a vehicle based on a variety of factors is an act practiced for over a century.  *See*

7    *CCC Info. Servs., Inc. v. MacLean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 63 (2d

8    Cir. 1994) (describing the "Red Book," which has been published since 1911 and

9    "sets forth the editors' projections of the values for the next six weeks of 'average'

10   versions of most of the used cars (up to seven years old) sold in that region.  These

11   predicted values are set forth separately for each automobile make, model number,

12   body style, and engine type.  Red Book also provides predicted value adjustments

13   for various options and for mileage in 5,000 mile increments.").  And there can be

14   no dispute that collecting information related to a damaged vehicle for insurance

15   purposes is—at least—a decades-old practice.  *See NADA Servs. Corp. v. CCC*

16   *Info. Servs. Inc.*, No. 91 C 4593, 1991 WL 287961, at *2 (N.D. Ill. Nov. 15, 1991)

17   (describing a computerized valuation service for "totalled" vehicles).  Collecting

18   information about a damaged car and using it to generate a valuation is just as, if

19   not more, basic and fundamental than the concepts of "hedging against the financial

20   risk" and "intermediated settlement" that the Supreme Court has held to be

21   unpatentably abstract.  *See Alice*, 134 S. Ct. at 2355-56.

22        Furthermore, the patents themselves demonstrate that the assessment of the

23   value of a damaged vehicle is a longstanding insurance practice.  For example, the

24   "Background of the Invention" section of the specification describes the basic

25   process for a "total loss" insurance claim:

26

27        When a vehicle such as an automobile is damaged the owner may file
         a claim with an insurance carrier.  A claims adjuster typically inspects
28        the vehicle to determine the amount of damage and the costs required

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

15

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

> to repair the automobile.  If the repair costs exceed the value of the automobile, or a percentage of the car value, the adjuster may "total" the vehicle.

*E.g.*, '740 Pat., col. 1:13-19.  The background also goes on to describe the standing practice of valuing a damaged vehicle by the use of software, computers, and even through dial-up servers.  *Id.*, col. 1:21-47.  Thus, given that the patents themselves acknowledge the fundamental nature of the idea at their core, the asserted claims should be found to be directed to an abstract concept.

## B.   The Asserted Claims Have No Transformative Elements Because Reciting the Internet or Generic Computer Components Does Not Transform the Claims

Because the claims are drawn to an abstract idea, they can only satisfy Section 101 if they include concrete elements sufficient to "transform th[e] abstract idea into a patent-eligible invention."  *See Alice*, 134 S. Ct. at 2357.  Artful drafting will not do.  *Id*.; *Parker v. Flook*, 437 U.S. 584, 593 (1978).  Reciting a general purpose computer will not do, nor will a complex or lengthy specification.  *Alice*, 134 S. Ct. at 2358, 2360.  The claims must incorporate the abstract idea into an unconventional, technological improvement in the "physical realm."  *buySAFE*, 765 F.3d at 1353; *see also Alice*, 134 S. Ct. at 2357.

Here, the claims of the patents-in-suit are not directed to a specific and inventive implementation, but instead describe a basic idea (valuation of a damaged vehicle) that may be implemented with a wide variety of entirely conventional devices over the Internet.  As in *Alice,* the claims do not "purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field."  *Alice*, 134 S. Ct. at 2359.  Instead, the claims of the patents-in-suit preempt lack any meaningful limitation beyond generally linking the concept of valuing a damaged vehicle based on information provided about the vehicle to a generic technological environment:  an Internet website.  *See id.* at

Morgan, Lewis &
Bockius LLP
Attorneys At Law

16

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

2360.  Therefore, the claims of the patents-in-suit do no more than improperly

attempt to monopolize the use of valuing a damaged vehicle based on information

provided about the vehicle using an Internet website.  *See id.* at 2357.

### 1.      The Asserted Claims Do No More Than "Add the Internet" to an Abstract Claim

The patents-in-suit make clear that Audatex's alleged invention is directed

solely to implementing a well known insurance claim process via an Internet

website.  This is insufficient to satisfy *Alice*'s step two as recently described in the

*Ultramercial* opinion, which found that "[t]he claims' invocation of the Internet also

adds no inventive concept." *Ultramercial*, slip op. at 11.  *Ultramercial* is

particularly relevant to the present litigation because, as mentioned above, Audatex

explicitly compared the now-invalid patent in *Ultramercial* to the patents-in-suit.

And, like *Ultramercial*, implementing the abstract concept of providing a valuation

of a damaged vehicle via an Internet website constitutes no more than an attempt to

limit the use of the abstract idea to a particular technical environment, "which is

insufficient to save a claim." *Id.*, slip op. at 11-12.

That the asserted claims are no more than an abstract idea implemented on an

Internet website is plain from the face of the patents-in-suit.  For example, the

summary of the alleged invention states:  "A method and system for entering data

relating to an insurance claim for a damaged vehicle and transmitting a valuation

report for the damaged vehicle ***through the world wide web.***"  '740 Pat., col. 1:55-

57 (emphasis added).  Furthermore, as described in the Background Information

section of the patents-in-suit, the specific issue addressed by the claims was that

prior to the alleged invention, claims adjusters needed to dial a specific phone

number to access a server to obtain a vehicle valuation and the claims.  '740 Pat.,

col. 1:45-48.  The patents-in-suit state that "[i]t would be desirable to provide a

method and system that would allow a claims adjuster to more readily access a

valuation database for damaged vehicles." *Id.*, col. 1:48-51.  The patents-in-suit

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

17

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

then provide that "[a] claims adjuster can access the web server by merely entering a uniform resource locator ("URL") into a web browser.  The adjuster does not have to dial directly into the valuation server."  *Id.*, col. 2:17-20.  Given this description, Audatex's alleged invention is directed to no more than an application of a known abstract concept over an Internet website—which *Ultramercial* has deemed insufficient for patentability.[9]  *Id.* at slip op. 11 ("The claims' invocation of the Internet also adds no inventive concept.  As we have held, the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101."); *see generally CyberSource*, 654 F.3d 1366 (reasoning that the use of the Internet to verify a credit card transaction does not meaningfully add to the abstract idea of verifying the transaction).

Audatex confirms this point in its response to Mitchell's CBM petitions.  Specifically, in response to Mitchell's Section 101 challenge, Audatex admits that the prior art included "utilizing a system with a client computer specifically configured to dial-in to a server" to obtain a valuation report.  (*See, e.g.*, Shah Decl., Ex. F at 24; *see also* Shah Decl. Ex. G at 24; Shah Decl. Ex. H at 24.)  Audatex effectively admits that its invention simply changes the configuration from dialing into a server to accessing the server over the Internet.

## 2. The Asserted Claims Merely Recite Generic Computer Components

Recent Supreme Court case law also confirms that the mere addition of general computer components to an abstract concept does not render subject matter patentable.  *See Alice*, 134 S. Ct. at 2358 (stating that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-

---

[2] That the patents-in-suit only add the internet is confirmed by Audatex's recent CBM responses, which indicate that non-infringing alternatives include systems that dial-in to a server directly or are offline.  (Shah Decl., Ex. F at 24; *see also* Shah Decl. Ex. G at 24; Shah Decl. Ex. H at 24..)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

18

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

1   eligible invention"); *see also Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,

2   No. 2:13-CV-655, 2014 WL 4364848, at *10 (E.D. Tex. Sept. 3, 2014) ("Adding a

3   computer to perform those mental steps 'does not transform a patent-ineligible

4   claim into a patent-eligible one.'") (quoting *Accenture*, 728 F.3d at 1345).  All of

5   the independent claims, including the method, system, server, and storage medium

6   claims of the patents-in-suit fall squarely within the types of generic computer

7   implementation described by *Alice*.

8           The asserted independent method claims (Claim 1 of each patent-in-suit)

9   merely describe using generic computer components to perform conventional

10  functions.  For example, Claim 1 of the '740 patent describes the following generic

11  components:  a "uniform resource locator," an "electronic communication

12  network," a "client computer," a "web site," "web pages," and a "server."  '740

13  Pat., col. 4:29-42.  Claim 1 of the '513 patent and claim 1 of the '038 patent contain

14  the same components and add nothing new.  '513 Pat., col. 4:36-49; '038 Pat., col.

15  4:38-53.  These common computer components or concepts do not differ from the

16  "data processing system," "communications controller," and "data storage unit" that

17  were found insufficient in *Alice*.  *See Alice*, 134 S. Ct. at 2360.  As in *Alice*, nothing

18  in these claims "offers a meaningful limitation beyond generally linking the use of

19  the [method] to a particular technological environment, that is implementation via

20  computers."  *Id.* (internal quotations and citations omitted).

21          Nor do the other independent claims of the patents-in-suit add anything more

22  than similar generic computer parts to the abstract concept of valuing a damaged

23  vehicle and thus they fail for the same reasons as the method claims.  *See Cogent*

24  *Medicine, Inc.* 2014 WL 4966326, at *6 (finding that the "system and computer

25  component claims rise and fall with the method claims" because "the system claims

26  are no different from the method claims in substance").  For example, claim 10 of

27  the '740 patent (a system claim) describes an "electronic communication network,"

28  "a web server," "a web site," "web pages," and a "computer."  '740 patent, col.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

19

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

4:62-5:8.  The same exact components exist in the system claims of the '513 patent and the '038 patent.  '513 Pat., col. 5:3-12; '038 patent, col. 5:7-19.

Even claim 18 of the '038 patent (one of the "server" claims)—which Audatex has previously cited as an exemplar of the inventions claimed in the patents-in-suit (*see* Dkt. No. 80 at 2)—merely recites nonspecific, standard computer parts – "a server," "a memory device," "a communication port," "a processor," "a website," and "at least one webpage."'038 Pat., col. 5:36-49.  The independent server claims of the '740 and '513 patents also describe the same non-transformative parts.  '740 Pat., col. 5:27-6:2; '513 Pat., col. 5:33-46.

Similarly, each "storage medium" claim only recites the following non-specific computer components: "computer readable storage medium," "computer program," "server," "web site," and "web page."  '740 Pat., col. 6:14-24; '513 Pat., col. 6:17-27; '038 Pat., col. 6:18-30.   Even if considered in combination, the claims amount to nothing more than using generic computer components, servers, and a network together in known ways (i.e., through the internet) to carry out the abstract concept of valuing a damaged vehicle based on information provided about the vehicle.  This is not enough to survive scrutiny under Section 101.

All of the dependent claims fair no better than the independent claims.  The dependent claims that describe the type of data used or input for the vehicle valuation and the use of an original equipment guide database do not add any novel machine or apparatus.  Furthermore, the dependent claims that add limitations based on the method of transmission between computers do not sufficiently transform the abstract claims.  *See Ultramercial*, slip op. at 13 ("Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis.").  The remaining dependent claims simply describe a "valuation server," which performs a generic processing or calculation function, but do not describe any improvement to the processing function or anything unique about the valuation server itself (it could

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

20

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

1   apparently be any generic server set up to perform the calculation).  This is not

2   enough.  *See Alice*, 134 S. Ct. at 2360 (nothing that "[n]early every computer"

3   would include certain generic parts that are "capable of performing the basic

4   calculation, storage, and transmission functions" of the claims).  Thus, none of the

5   dependent claims of the patents-in-suit serve to transform the abstract concept of

6   vehicle valuation into a patent-eligible invention.

7        Additionally, courts applying *Alice* have found that elements involving

8   functions such as calculations, data retrieval, information display, and data

9   manipulation or storage do not sufficiently transform the claim to survive the

10  second part of the *Alice* framework.  *See Digitech Image Techs., LLC v. Elecs. for

11  Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (process that uses

12  "mathematical algorithms to manipulate existing information to generate additional

13  information is not patent eligible"); *Data Distrib. Techs., LLC, v. Brer Affiliates,

14  Inc.*, No. 12-4878, 2014 WL 4162765, at *12 (D.N.J. Aug. 19, 2014) ("a modern

15  computer takes the place of a more humble technology, the ledger; though the tool

16  has changed, the activity is the same");  *DietGoal Innovations LLC v. Bravo Media

17  LLC*, No. 13 Civ. 8391, 2014 WL 3582914, at *14 (S.D.N.Y. July 8, 2014) ("The

18  addition of a computer to perform calculations, retrieve data, and visually display

19  images is nothing more than 'post-solution activity' that cannot render the process

20  patentable.").  The individual elements of the patents-in-suit similarly do no more

21  than perform calculations (the "valuation server") or display information ("web

22  pages" and "web site").

23

24

25

26

27

28

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

Finally, the figures in the common specification of the patents-in-suit confirm the alleged inventions do not employ any special purpose computer or equipment:



As in *Alice*, these figures demonstrate that "each step does no more than require a generic computer to perform generic computer functions." *Alice*, 134 S. Ct. at 2359.

Therefore, because none of the claims add any meaningful improvements to the well-known, conventional components that make up the alleged invention, they are all unpatentable under § 101.

### 3. The Asserted Claims Also Fail the "Machine-or Transformation Test"

The claims of the patents-in-suit also fail the "machine-or-transformation" test because they are not tied to a novel machine or apparatus, nor do they transform any article into a different state or thing. *See Ultramercial*, slip op. at 12-13. First, the patents-in-suit are not tied to a particular machine because, as discussed above, they recite only generic, well-known computer components that operate in a conventional manner over the internet. For example, claims 1 and 10 of the '740 patent refer to "a client computer," but that client computer is not limited to any particular or specialized machine by the patents—in fact, the patents indicate that the client computer is a general computer that can access the world

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

22

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

wide web.  *See, e.g.*, '740 patent, col. 2:46-62 (describing an embodiment of the client computer as including generic, non-specialized components).  The same is true of "a memory device" (*see, e.g.*, '740 patent, claim 18) and "computer readable storage" (*see, e.g.*, '740 patent, claim 24). Use of a "web site," "web pages," "uniform resource locator," and "TCP/IP" similarly fails to require a particular machine because these are common to all web-based systems.  *See Ultramercial*, slip op. at 12-13 ("As we have previously held, the Internet is not sufficient to save the patent under the machine prong of the machine-or-transformation test.").

Second, the asserted claims do not transform any article into a different state or thing.  All that is carried out in the claims is the age-old claims adjusters' practice of valuing a damaged vehicle based upon information about that vehicle. The fact that this occurs in a web-based system is irrelevant, because electronic data organization and manipulation within a computer environment does not meet the required transformation.  *See, e.g., Ultramercial*, slip op. at 13 ("Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis."); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) ("The mere collection and organization of data . . . is insufficient to meet the transformation prong of the test.").  Therefore, the claims do not transform any article, a failure that underscores the invalidity of the patents-in-suit under Section 101.

## V.    CONCLUSION

Audatex's claims are drawn to unpatentable abstract ideas.  Mitchell respectfully requests that the Court enter summary judgment that each asserted claim of the patents-in-suit is unpatentable under 35 U.S.C. § 101, and therefore, invalid.

Morgan, Lewis &
Bockius LLP
Attorneys At Law

23

DEFENDANT'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION FOR
SUMMARY JUDGMENT
CASE NO. 3:13-CV-01523-BEN-BLM

Dated:  December 9, 2014

Respectfully Submitted,

MORGAN, LEWIS & BOCKIUS LLP


By  /s/ Mansi H. Shah
       Mansi H. Shah

Attorneys for Defendant
MITCHELL INTERNATIONAL,
INC.

24