1          UNITED STATES MAGISTRATE COURT

2        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4

5

    AUDATEX NORTH AMERICA, INC.,          .

6                                          .

              PLAINTIFF,                   . NO. 13-CV-1523

7                                          .

                   V.                      . JANUARY 29, 2015

8                                          .

    MITCHELL INTERNATIONAL, INC.,          . 10:24 A.M.

9                                          .

              DEFENDANT.                   . SAN DIEGO, CALIFORNIA

10   . . . . . . . . . . . . . . . .       .

11

12

13           TRANSCRIPT OF MOTION HEARING
        BEFORE THE HONORABLE BARBARA LYNN MAJOR

14             UNITED STATES MAGISTRATE JUDGE

15

    APPEARANCES:

16

17   FOR THE PLAINTIFF:      IRELL AND MANELLA
                             BY:  DAVID C. MCPHIE, ESQ.

18                           BY:  PATRICK MCGILL, ESQ.
                             840 NEWPORT CENTER DR, STE. 400

19                           NEWPORT BEACH, CALIFORNIA  92660

20   FOR THE DEFENDANT:      MORGAN, LEWIS & BOCKIUS, LLP
                             BY:  JASON C. WHITE, ESQ.

21                           77 WEST WACKER DRIVE, SUITE 500
                             CHICAGO, ILLINOIS  60601

22

23   COURT REPORTER:         DEBORAH M. O'CONNELL, RPR, CSR
                             333 W. BROADWAY, SUITE 420

24                           SAN DIEGO, CALIFORNIA, 92101

25

    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDINGS

```
1            SAN DIEGO, CALIFORNIA, JANUARY 29, 2015, 10:24 A.M.

2                              *  *  *  *

3

4            THE CLERK:  FOR THE RECORD, ITEM NO. 2,

5   13-CV-1523-BEN-BLM, AUDALEX NORTH AMERICA, INC. VS. MITCHELL

6   INTERNATIONAL, INC., ON FOR MOTION HEARING.

7         PLEASE STATE YOUR APPEARANCES FOR THE RECORD.

8            MR. MCPHIE:  GOOD MORNING, YOUR HONOR.  DAVID MCPHIE,

9   WITH AUDALEX.

10           THE COURT:  THANK YOU.

11           MR. MCGILL:  PATRICK MCGILL.

12           THE COURT:  YOU'RE NOT ON MY CALENDAR.

13           MR. WHITE:  GOOD MORNING, YOUR HONOR.  JASON WHITE,

14  FOR MITCHELL.

15           THE COURT:  AND YOU ALSO ARE NOT ON MY CALENDAR.

16       OKAY.  HAVE A SEAT, GENTLEMEN.  I SET THIS FOR A HEARING,

17  RATHER THAN ISSUING A WRITTEN ORDER, BECAUSE I AM VERY

18  CONCERNED ABOUT THE LARGE NUMBER OF DISCOVERY DISPUTES THAT THE

19  PARTIES ARE HAVING AND THE FACT THAT YOU ARE HAVING THEM SO

20  CLOSE TO THE CLOSE OF DISCOVERY.

21       WHEN I STARTED LOOKING AT ALL THE DISPUTES THAT THE

22  PARTIES HAVE, I DECIDED THAT THE FASTEST AND MOST EFFECTIVE AND

23  EFFICIENT WAY TO GET THE RULING TO YOU WAS TO HAVE EVERYBODY

24  COME IN AND ISSUE MY RULINGS ORALLY.  I WILL BE ISSUING A

25  WRITTEN ORDER AFTER THIS HEARING, BUT IT'S GOING TO JUST STATE
```

1   WHETHER I GRANT IT OR DENY MOTIONS.  THE REASONING I'M GOING TO

2   SET FORTH RIGHT NOW.  I DO NOT NEED ORAL ARGUMENTS ON THE VAST

3   MAJORITY OF THESE MOTIONS.  THEY WERE PRETTY STRAIGHTFORWARD.

4   THEY WERE WELL BRIEFED.  BUT AS I SAID, I'M DOING THIS VERBALLY

5   BECAUSE IT'S THE FASTEST WAY TO GET THE RULINGS TO THE PARTIES,

6   AND YOU NEED TO GET FACT DISCOVERY COMPLETED AND MOVE INTO

7   EXPERT DISCOVERY.

8       FOR THE RECORD, I HAVE READ ALL OF THE PLEADINGS THAT THE

9   PARTIES SUBMITTED AND I'VE REVIEWED AND READ ALL OF THE

10  RELEVANT EXHIBITS, INCLUDING THE ONES THAT ARE UNDER SEAL.

11  OKAY, I'M NOT GOING TO RESTATE ALL OF THE ARGUMENTS.  YOU GUYS

12  KNOW WHAT YOUR ARGUMENTS ARE.  I'M GOING TO GET RIGHT INTO THE

13  LAW AND THE RULINGS.

14      SO THE FIRST MOTION IS MITCHELL'S MOTION TO DEPOSE

15  ATTORNEY BEN YORKS.  THEY DO IT ON THE HOPES OF OBTAINING

16  EVIDENCE REGARDING THE DEFENSE OF INEQUITABLE CONDUCT.

17  INEQUITABLE CONDUCT IS THE DEFENSE, AS THE FED CIRCUIT IN

18  AMERICAN CAL CAR, INC. VS. AMERICAN HONDA MOTOR COMPANY, 651

19  F.3D 1318, AT 1334, STATED TO PROVE, QUOTE, TO PROVE

20  INEQUITABLE CONDUCT, THE ACCUSED INFRINGER MUST PROVIDE

21  EVIDENCE THAT THE APPLICANT, ONE, MISREPRESENTED OR OMITTED

22  MATERIAL INFORMATION; AND TWO, DID SO WITH A SPECIFIC INTENT TO

23  DECEIVE THE PATENT AND TRADEMARK OFFICE, CLOSED QUOTES.

24      GENERALLY, THE MATERIALITY THAT IS REQUIRED TO ESTABLISH

25  INEQUITABLE CONDUCT IS "BUT FOR," THAT IS, FOR EXAMPLE, WHETHER

1  PRIOR ART THAT AN APPLICANT FAILS TO DISCLOSE TO THE PATENT AND

2  TRADEMARK OFFICE IS A "BUT FOR" REASON THAT THE CLAIM WOULD

3  HAVE BEEN ALLOWED BUT FOR THE UNDISCLOSED PRIOR ART.

4      THE FED CIRCUIT IN 2000 -- OR IN THAT CASE, CITING A 2010

5  CASE, STATED THAT IN A CASE INVOLVING NONDISCLOSURE OF

6  INFORMATION, CLEAR AND CONVINCING EVIDENCE MUST SHOW THAT THE

7  APPLICANT MADE THE DELIBERATE DECISION TO WITHHOLD A KNOWN

8  MATERIAL REFERENCE, AND IN REACHING THIS DECISION, THE

9  TESTIMONY OF THE INVENTORS AND THE PROSECUTING ATTORNEY ARE

10 RELEVANT.

11     IN THIS CASE, OBVIOUSLY, MR. YORKS WAS THE PROSECUTING

12 ATTORNEY, AND THAT IS THE REASON THAT MITCHELL WANTS TO DEPOSE

13 HIM.  I HAVE TO SAY, I HAVE SOME CONCERNS ABOUT THIS BECAUSE

14 MITCHELL HAS NOT ALLEGED THIS DEFENSE, AND WE ARE AT THE CLOSE

15 OF FACT DISCOVERY.  HOWEVER, GIVEN THE LAW SET FORTH BY THE FED

16 CIRCUIT, I DO BELIEVE THAT MITCHELL HAS A RIGHT TO DEPOSE HIM.

17 I FIND, HOWEVER, THAT THE SCOPE OF THE DEPOSITION NEEDS TO BE

18 LIMITED.  I AM CONCERNED ABOUT THE ISSUES RAISED BY AUDALEX

19 REGARDING MR. YORKS' CURRENT INVOLVEMENT IN RELATED LITIGATION

20 OR RELATED PROCEEDINGS IN FRONT OF THE PTO.

21     WHAT I INTEND TO DO IS LIMIT THE SCOPE OF DISCOVERY TO

22 ISSUES RELATING TO THE PRIOR ART REFERENCES THAT WERE CITED OR

23 ALLEGEDLY NOT CITED IN THE ORIGINAL APPLICATIONS FOR THE

24 PATENT-IN-SUIT AND DURING THE ORIGINAL U.S. PTO PROCEEDINGS.

25 WE'RE NOT GOING BEYOND THAT.  SO I WANT THIS LIMITED TO THAT

1    TIME FRAME AND INFORMATION REGARDING PRIOR ART THAT WAS EITHER

2    CITED OR NOT CITED.

3        I HAD A QUESTION.  I SAW THAT TANYA WILKINS WAS BEING

4    DEPOSED EARLIER THIS WEEK, OR LAST WEEK ON THIS ISSUE, AS

5    AUDALEX'S 30(B)(6) WITNESS.  WHAT HAPPENED WITH THAT

6    DEPOSITION?

7            MR. MCPHIE:  YOUR HONOR, IF I MAY?

8            THE COURT:  YES.

9            MR. MCPHIE:  OUR WITNESS IN FACT PROVIDED TESTIMONY

10   ON THIS VERY ISSUE AND DISCLOSED THE ANSWER.  AND THE REASON

11   THE NONDISCLOSURE -- OR THE ALLEGED NONDISCLOSURE IS PART OF

12   THAT 30(B)(6) TESTIMONY.  AND I HAVE THAT HERE.  WE ONLY -- WE

13   DIDN'T HAVE THE TRANSCRIPT.  I CAN TELL YOU WHAT SHE SAID.

14           THE COURT:  DID SHE IDENTIFY PRIOR ART THAT WAS NOT

15   PROVIDED TO THE PTO AND REASONS FOR IT?

16           MR. MCPHIE:  YEAH.  SO OUR UNDERSTANDING IS THAT THE

17   PRIMARY PRIOR ART THAT MITCHELL IS CONCERNED ABOUT HAS TO DO

18   WITH MITCHELL'S PRIOR ART PRODUCTS THAT WERE AVAILABLE BEFORE

19   THE FILING OF THE INITIAL PATENT APPLICATION.  THERE IS A

20   PRODUCT CALLED "FIRST ESTIMATE" AND A PRODUCT CALLED "IN

21   TOTAL."  AT THE DEPOSITION, MITCHELL ASKED AUDATEX 30(B)(6)

22   WITNESS, CAN YOU TELL ME WHY AUDATEX DID NOT DISCLOSE THE FIRST

23   ESTIMATE PRODUCT TO THE PATENT OFFICE IN CONJUNCTION WITH THE

24   PATENTS AT ISSUE IN THIS CASE.  SHE FIRST STATED SHE DIDN'T

25   HAVE FIRSTHAND KNOWLEDGE, BUT SHE HAD BEEN EDUCATED, AND SHE

1    SAID -- IN SPEAKING WITH HIM ABOUT WHAT WAS GOING ON AT THE

2    TIME, THEY SAID THAT THEY DID NOT KNOW THAT CERTAIN PRODUCTS

3    EVEN EXISTED.  THEY THOUGHT THEY WERE PRODUCTS LIKE FIRST

4    ESTIMATE THAT ONLY HANDLED ESTIMATING AND DIDN'T HAVE ANYTHING

5    TO DO WITH THE TOTAL LOST.  SO, THEREFORE, IT'S NOT RELEVANT.

6    AND I BELIEVE THAT THE PATENT ITSELF LISTS SOME REFERENCES OF

7    THINGS THAT OUR -- THAT OUR PROCESS DID VET OUT TO SAY HERE ARE

8    SOME EXAMPLES OF THINGS THAT WE FOUND THAT WE DON'T DO, THAT

9    THEY ARE THE SAME THING AS WHAT WE ARE INVENTING, BUT THIS IS

10   WHAT WE FOUND IN OUR SEARCH.  I THINK THERE ARE SEVERAL

11   EXAMPLES LISTED THERE.  AND SO THAT IS THE TESTIMONY, AND IT

12   GOES ON FOR A FEW MORE PAGES ABOUT THAT REFERENCE.

13        THE POINT MADE OR FOLLOWING THAT, NO. 1, THAT MANY OF THE

14   INVENTORS WEREN'T AWARE OF THE REFERENCE; 2, THE ONES THAT DID

15   HAVE AN AWARENESS OF THE REFERENCE DID NOT KNOW IN DETAIL HOW

16   IT OPERATED; THREE, THAT THEIR UNDERSTANDING OF THE OPERATION

17   OF THE REFERENCE WAS THAT IT WAS LIMITED TO A PARTIAL LOSS,

18   ESTIMATING ESTIMATE, AND NOT A TOTAL LOSS SYSTEM, WHICH IS WHAT

19   -- HIS EMBODIMENT PATENT IN THIS CASE.

20        AND FINALLY THAT THERE WERE, IN FACT, A NUMBER OF OTHER

21   REFERENCES THAT DISCLOSE WEB-BASED PARTIAL LOSS REFERENCES THAT

22   WERE, IN FACT, CONSIDERED BY THE PATENT OFFICE.  IN OTHER

23   WORDS, THESE OTHER REFERENCES, EVEN TO THE EXTENT THEY WERE

24   RELEVANT, WERE CUMULATIVE.

25             THE COURT:  OKAY.  MITCHELL, ANYTHING YOU'D --

1           MR. WHITE:  YES.  SO WE DID ASK HER THOSE QUESTIONS.

2     BUT ON THE ISSUE OF WHETHER OR NOT THE INVENTORS KNEW ABOUT

3     THEM, THESE SYSTEMS ARE DESCRIBED AS SEVERAL DOCUMENTS,

4     MULTIPLE DOCUMENTS.  SO I DON'T THINK -- I DON'T THINK THAT

5     THAT IS FAIR TO SAY THAT THE PLAINTIFFS DIDN'T KNOW ABOUT THEM.

6     WE ALSO DON'T KNOW WHAT OTHER SYSTEMS MAY HAVE OR MAY NOT HAVE

7     BEEN DISCLOSED TO THE ATTORNEYS.  SO WE KNOW A LITTLE BIT FROM

8     SOME OF THE INVENTORS.  WE HAVEN'T TALKED ABOUT ALL OF THEM

9     YET, WHAT INFORMATION FROM THE INVENTORS TO THE LAWYERS.  THE

10    LAWYERS ACT AS SORT OF A STOP GAP IN PRESENTING FROM THE PATENT

11    OFFICE.  WE DON'T KNOW WHAT INFORMATION ENDED WITH THE LAWYER.

12    WE KNOW THE SYSTEMS WERE NOT DISCLOSED TO THE PATENT OFFICE,

13    AND THERE CAN BE OTHER THINGS THAT WERE DISCLOSED TO LAWYERS

14    THAT WERE NOT DISCLOSED TO THE PATENT OFFICE.  SO WE WANT TO

15    EXPLORE.  WE NARROWED IT TO THE -- NO OTHER ISSUES BEYOND THE

16    SCOPE YOU SUGGESTED.  BUT WE THINK WE HAVE TO ASK THOSE

17    QUESTIONS IN ORDER TO DETERMINE WHETHER OR NOT THERE IS AN

18    ISSUE HERE.

19          THE COURT:  OKAY.

20          MR. WHITE:  AND WITH RESPECT TO THE PLEADINGS, WE

21    HAVEN'T DONE -- BECAUSE IT'S A FRAUD AND HIGH STANDARD, WE

22    DIDN'T WANT TO -- (INAUDIBLE).

23          THE COURT:  BUT YOU'RE WAY LATE TO BE GETTING A

24    DEPOSITION IN THE HOPES OF -- I THINK THERE IS LEGITIMATE

25    QUESTION AS TO WHETHER EVEN IF YOU FOUND OUT EVIDENCE OF IT,

```
1    WHETHER YOU CAN AMEND THIS LATE IN THE GAME.

2              MR. WHITE:  BUT DEFINITELY BRINGING THAT MOTION,

3    EVERYTHING IS DELAYED.  YOU CAN TALK ABOUT THIS --

4              THE COURT:  NO, NO.  SO I -- BECAUSE THE FED CIRCUIT

5    HAS MADE IT CLEAR THAT IN CONSIDERING INEQUITABLE CONDUCT

6    DEFENSE, THAT THE TESTIMONY OF THE INVENTORS AND THE

7    PROSECUTING ATTORNEY ARE RELEVANT, I AM GRANTING MITCHELL'S

8    MOTION TO DEPOSE MR. YORKS.  BUT I AM LIMITING THAT VERY

9    SIGNIFICANTLY ONLY TO ISSUES RELATING TO PRIOR ART, INFORMATION

10   THAT HE HAD REGARDING PRIOR ART AT THE TIME OF THE APPLICATION

11   AND IN THE INITIAL PROCEEDINGS IN FRONT OF THE PATENT OFFICE.

12   WE'RE NOT GOING BEYOND THAT SCOPE.  DO YOU UNDERSTAND, COUNSEL?

13             MR. WHITE:  YES, YOUR HONOR.

14             THE COURT:  OKAY.  THE SECOND ISSUE IS MITCHELL'S

15   MOTION TO DEPOSE ANTHONY AQUILA.  AM I SAYING THAT RIGHT,

16   "AQUILA"?

17             MR. WHITE:  I BELIEVE IT IS "AQUILA."

18             THE COURT:  THANK YOU.  ANTHONY AQUILA, HE'S THE

19   FOUNDER, PRESIDENT, AND CEO OF SOLERA HOLDINGS.  AUDATEX IS

20   OPPOSED BECAUSE HE'S AN APEX WITNESS.  AND MITCHELL SET FORTH A

21   NUMBER OF BASES ON WHICH THEY WANT TO DEPOSE HIM.  INITIALLY, I

22   WANT TO SAY THAT MR. AQUILA'S DECISION TO SWITCH JOBS AND LEAVE

23   MITCHELL, THEN EITHER CREATE OR JOIN SOLERA MORE THAN TEN YEARS

24   AGO OR ABOUT TEN YEARS AGO IS IRRELEVANT TO THE ISSUES IN THE

25   INSTANT LITIGATION.
```

1    I UNDERSTAND MITCHELL'S ARGUMENT AS TO WHY THEY THINK IT'S

2   RELEVANT, AND I STRONGLY DISAGREE.  I FOUND THAT EVEN UNDER THE

3   BROAD DISCOVERY STANDARD THAT IS APPLICABLE, THAT THAT ISSUE IS

4   VERY SPECULATIVE.  EVEN MITCHELL SAYS THAT IT MAY LEAD TO THE

5   DISCOVERY OF ADMISSIBLE EVIDENCE, AND DISCOVERY CLOSES

6   TOMORROW.  IT'S NOT GOING TO LEAD TO ADMISSIBLE EVIDENCE.  SO

7   ON THAT ISSUE, I DENY IT BECAUSE IT'S IRRELEVANT.

8    ON THE NEXT ISSUE, ALL OF THE OTHER THINGS THEY WANTED TO

9   ASK HIM ABOUT, I FIND THAT HE IS AN APEX WITNESS.  I DON'T FIND

10  THAT'S EVEN CLOSE.  I FIND THAT THAT STATUS HAS EASILY BEEN

11  ESTABLISHED.  I DID REVIEW HIS -- ALL OF THE INFORMATION ON

12  THAT.  SO ONCE I DETERMINED THAT HE IS AN APEX WITNESS, THEN

13  THE QUESTION IS, WHETHER HE CAN BE DEPOSED.  AND THE COURTS

14  HAVE TRADITIONALLY STATED THAT IN DECIDING WHETHER TO ALLOW AN

15  APEX DEPOSITION, COURTS SHOULD CONSIDER WHETHER THE HIGH LEVEL

16  DEPONENT HAS UNIQUE, NONCUMULATIVE KNOWLEDGE OF THE FACTS AT

17  ISSUE; AND TWO, WHETHER THERE ARE OTHER LESS BURDENSOME

18  METHODS.  LET'S SEE, CITING WEBSITE STORY, INC. VS. NETRATINGS,

19  INC., 2007 WESTLAW 1120567, AT 2, PAGE 2, AND SOLARCITY, INC.

20  VS. ULTRA CLEAN HOLDING, A 2007 CASE, OUT OF THE NORTHERN

21  DISTRICT OF CALIFORNIA.

22   AND THE COURTS HAVE STATED THAT WHEN A HIGH LEVEL

23  CORPORATE EXECUTIVE LACKS UNIQUE OR SUPERIOR KNOWLEDGE OF THE

24  FACTS IN DISPUTE, COURTS HAVE FOUND THAT GOOD CAUSE EXISTS TO

25  PROHIBIT THE DEPOSITION.  THIS IS ESPECIALLY SO WHEN THE

1    INFORMATION SOUGHT IN THE DEPOSITION CAN BE OBTAINED THROUGH

2    LESS INTRUSIVE DISCOVERY METHODS, SUCH AS INTERROGATORY

3    THEORIES, OR FROM DEPOSITIONS OF LOWER-LEVEL EMPLOYEES WITH

4    MORE DIRECT KNOWLEDGE OF THE FACTS AT ISSUE.

5         CERTAINLY, THE FACT THAT YOU'RE AN APEX WITNESS DOES NOT

6    PROHIBIT CATEGORICALLY YOUR DEPOSITION, BUT IT IS SOMETHING

7    THAT THE COURT NEEDS TO CONSIDER.  AFTER REVIEWING HIS

8    DECLARATION AND THE OTHER EVIDENCE SUBMITTED, AS I SAID, I

9    DID -- OR I DO FIND THAT HE IS AN APEX WITNESS, AND I ALSO FIND

10   THAT MITCHELL HAS NOT SATISFIED THE ELEMENTS REQUIRED TO DEPOSE

11   HIM.  MITCHELL INDICATED THAT THEY WANTED TO DEPOSE HIM ON HIS

12   KNOWLEDGE OF MITCHELL'S OWN PRODUCTS IN EARLY 2000, WHEN HE

13   WORKED FOR THEM, AND ABOUT A PATENT THAT WAS CITED AS RELEVANT

14   ART IN THE APPLICATION FOR A PATENT AT ISSUE IN THIS

15   LITIGATION.

16        INITIALLY, I FIND THAT THEY HAVE NOT IDENTIFIED ANY UNIQUE

17   INFORMATION THAT HE HAS WITH REGARD TO MITCHELL'S OWN PRODUCTS.

18   COMMON SENSE INDICATES THAT THERE ARE LIKELY NUMEROUS MITCHELL

19   EMPLOYEES WHO HAVE THE SAME OR BETTER INFORMATION REGARDING

20   MITCHELL'S OWN PRODUCTS.  IN ADDITION, MITCHELL HAS NOT

21   IDENTIFIED ANY FACTS, E-MAILS, DOCUMENTS, TESTIMONY, OR

22   ANYTHING ELSE INDICATING THAT MR. AQUILA HAS UNIQUE

23   INFORMATION.  I HAVE REVIEWED HIS DECLARATION, AND I THINK IT

24   SUPPORTS THE COURT'S CONCLUSIONS ON THIS FACT.  AND MITCHELL

25   HAS NOT PROVIDED ANY CONTRADICTORY EVIDENCE.

ON THE PRIOR ART ISSUE, HE IS ONE OF NINE INVENTORS.  AND
THE OTHER INVENTORS, PRESUMABLY WHO DO NOT WORK FOR AN ENTITY
RELATED TO AUDATEX, HAVE NOT BEEN DEPOSED.  IN ADDITION,
AUDATEX ASSERTS THAT THE PRIOR ART PATENT IS ASSIGNED TO
MITCHELL, AND SOME OF THE INVENTORS ARE MITCHELL EMPLOYEES.  AS
A RESULT, I FIND THAT MITCHELL HAS NOT ESTABLISHED THAT HE HAS
ANY UNIQUE NONCUMULATIVE KNOWLEDGE OF THE FACTS AT ISSUE, AND I
FIND THEY HAVEN'T SATISFIED THE FIRST ELEMENT.

I ALSO FIND THAT THEY HAVEN'T SATISFIED THE SECOND
ELEMENT.  BECAUSE THEY HAVEN'T ESTABLISHED THAT THERE ARE OTHER
WAYS TO GET THIS, ESPECIALLY FROM THEIR OWN EMPLOYEES.
MITCHELL ARGUES THAT THEY HAVE THE RIGHT TO DEPOSE ANYONE WITH
KNOWLEDGE; THEY DON'T HAVE TO DEPOSE THE MOST KNOWLEDGEABLE.
AND CERTAINLY THAT IS TRUE.  HOWEVER, IN THIS CASE, HE'S AN
APEX WITNESS, AND THEY HAVE NOT ESTABLISHED THE NEED FOR HIS
TESTIMONY.  IN FACT, IT APPEARS TO ME THAT THE REASON THEY WANT
TO DEPOSE THIS INDIVIDUAL, AS OPPOSED TO ALL OF THE OTHERS WITH
SIMILAR KNOWLEDGE, IS THE FACT THAT HE LEFT MITCHELL AND WENT
TO WORK FOR SOLERA, WHICH IS RELATED TO AUDATEX.  THEREFORE,
THAT MOTION IS DENIED.

THE NEXT MOTION IS AUDATEX'S MOTION TO COMPEL DAMAGE
DISCOVERY.  AND I'M GRANTING THAT.  I'VE GRANTED IT BEFORE.  I
GRANTED IT THE FIRST TIME.  I GRANTED IT ON RECONSIDERATION.
AND I'M NOW GRANTING IT ON ANOTHER MOTION.  ALL OF THE SAME
ARGUMENTS ARE BEING MADE BY MITCHELL.  I'M ACTUALLY NOT GOING

1   TO GO BACK THROUGH ALL OF THOSE ARGUMENTS, AND I REFERENCE MY

2   PRIOR ORDER ON THIS CASE AND MY ORDER ON RECONSIDERATION.  THE

3   INITIAL DISCOVERY REQUESTS FROM AUDATEX SOUGHT INFORMATION FROM

4   THE 2000 -- FROM 2006 TO THE PRESENT.  AUDATEX OPPOSED ON --

5   MITCHELL OPPOSED ON THE BASIS THAT AUDATEX WAS NOT GOING TO BE

6   ABLE TO ESTABLISH DAMAGES UNDER 35, U.S.C., SECTION 154(D) AND

7   SO REFUSED TO ANSWER.  I OVERRULED THAT, REQUIRED THEM TO

8   ANSWER.  THEY THEN APPARENTLY IGNORED THE FACT THAT THE REQUEST

9   WAS 2006 TO THE PRESENT, AND THEY PROVIDED ONLY DOCUMENTS FROM

10  MARCH OF 2011.

11       I FIND THERE IS NO BASIS FOR WHAT THEY'RE DOING.  AS I

12  INDICATED, THERE CLEARLY STATED IN MY ORIGINAL ORDER, THE COURT

13  IS NOT ASKING -- IS NOT BEING ASKED TO DECIDE WHETHER AUDATEX

14  IS ENTITLED TO DAMAGES UNDER SECTION 154(D).  I MAKE NO RULING,

15  WHATSOEVER, ON THAT ISSUE.  HOWEVER, DISCOVERY UNDER RULE 26 IS

16  VERY BROAD.  AND AUDATEX IS ENTITLED TO DAMAGES RELATING TO

17  CLAIMS THAT THEY'RE MAKING.  THEY'RE MAKING THIS CLAIM, THEY'RE

18  ENTITLED TO THESE DAMAGES.  SO ONCE AGAIN, THIS MOTION TO

19  COMPEL IS GRANTED.  I INITIALLY REQUIRED THIS TO BE PRODUCED

20  MANY MONTHS AGO.  I, THEREFORE, AM ORDERING MITCHELL TO PRODUCE

21  THE REQUESTED DOCUMENTS AND PROVIDE A SUPPLEMENTAL RESPONSE BY

22  MONDAY, FEBRUARY 2ND.

23            MR. WHITE:  CAN I --

24            THE COURT:  SURE.

25            MR. WHITE:  SO THE ISSUE OF 154 WAS NOT SQUARELY

1    BEFORE -- BEFORE, IN FACT, THEY AMENDED DURING INTERROGATORY

2    RESPONSE AFTER THE ORIGINAL MOTION TO GRANT, THE MOTION TO

3    COMPEL WAS GRANTED.  THAT WAS A SUPPLEMENTAL.  THEY DIDN'T

4    RAISE 154, A SPECIFIC BASIS, PRE-ISSUANCE DAMAGES, AND THEY

5    DIDN'T PROVIDE ANY BASIS UNTIL AFTER THAT.  SO I JUST WANT --

6    WE WILL ABIDE BY YOUR ORDER.  WE DON'T WANT YOU TO THINK WE

7    WERE WILLFULLY IGNORING YOUR ORDER.  THIS WHOLE ISSUE OF

8    PRE-ISSUANCE DAMAGES WAS NOT TEE'D UP UNTIL AFTER THE FIRST

9    MOTION TO COMPEL WAS GRANTED.

10           THE COURT:  WELL, MY FIRST ISSUE, THEIR REQUEST WAS

11   ANNUAL STATEMENTS FROM 2006 TO THE PRESENT.  AND I GRANTED IT.

12           MR. WHITE:  I UNDERSTAND.

13           THE COURT:  AND YOU ONLY PROVIDED IT -- YOU

14   RECONSIDERED ON -- YOU ONLY PROVIDED IT ON CERTAIN PRODUCTS.  I

15   HAD TO FILE ANOTHER MOTION SAYING MORE PRODUCTS.  I DIDN'T

16   REALIZE AT THE TIME THAT YOU HADN'T PROVIDED THE FULL TIME

17   PERIOD, SO NOW WE'RE ON OUR THIRD MOTION.  I'M GRANTING IT.

18   PROVIDE THAT INFORMATION BY MONDAY.

19      ALL RIGHT.  THE NEXT ONE IS AUDATEX'S MOTION FOR APPROVAL

20   OF DR. SULLIVAN AS AN EXPERT.  AND MITCHELL WAS OPPOSED TO THIS

21   BECAUSE THEY CONTACTED WITH DR. SULLIVAN AND HIS COMPANY,

22   INTENSITY CORP.  AND THEY'RE CONCERNED -- THEY BELIEVE THEY

23   PROVIDED CONFIDENTIAL INFORMATION TO HIM THAT MAKES HIM UNABLE

24   THEN TO -- CREATES A CONFLICT THAT SHOULD PREVENT HIM FROM

25   SERVING AS AN EXPERT FOR AUDATEX.  I HAVE REVIEWED THE

1    DECLARATIONS THAT HAVE BEEN SUBMITTED BY BOTH DR. SULLIVAN AND

2    THE RAVI NEMANI -- AM I SAYING THAT RIGHT?  IS HE YOUR WITNESS?

3              MR. WHITE:  IT IS A SHE.

4              THE COURT:  I'M SORRY, THAT'S HOW BAD IT IS.  OKAY.

5    RAVI NEMANI.

6              MR. WHITE:  THAT IS CLOSE ENOUGH.

7              THE COURT:  ALL RIGHT.  THANK YOU.  SO I REVIEWED

8    BOTH OF THOSE DECLARATIONS.  AND OBVIOUSLY THERE IS A

9    PROTECTIVE ORDER IN PLACE HERE THAT GOVERNS THE PRODUCTION OF

10   INFORMATION TO EXPERTS.  FOR EXPERT DISQUALIFICATION, THE

11   PARTIES GENERALLY FOLLOW -- OR SORRY, THE COURT GENERALLY

12   FOLLOWS A TWO PART -- OR APPLIES A TWO-PART TEST.  FIRST, COULD

13   THE PARTY CLAIMING A CONFLICT REASONABLY CONCLUDE THAT IT HAD A

14   CONFIDENTIAL RELATIONSHIP WITH THE EXPERT; AND TWO, DID THAT

15   PARTY DISCLOSE ANY CONFIDENTIAL OR PRIVILEGED INFORMATION TO

16   THE EXPERT?  THAT STANDARD HAS BEEN SET FORTH IN A NUMBER OF

17   CASES, INCLUDING ALIEN TECHNOLOGY CORP VS. INTERMEC, INC., A

18   2007 WESTLAW 4261972 AT 1, OUT OF -- AND ALSO A 2012 CASE OUT

19   OF SAN DIEGO, PELLERIN VS. HONEYWELL INTERNATIONAL, 2012,

20   WESTLAW 112539, AT 2.

21       IN REACHING THIS DECISION, SOME COURTS HAVE DISTINGUISHED,

22   QUOTE, CONFIDENTIAL INFORMATION THAT RELATES TO PURELY

23   TECHNICAL OR BUSINESS INFORMATION THAT IS DISCOVERABLE IN

24   LITIGATION, AND INFORMATION THAT RELATES TO CONFIDENTIAL

25   COMMUNICATIONS CONCERNING LEGAL STRATEGIES AND OTHER

1  LITIGATION-RELATED ISSUES THAT IS PRIVILEGED AND NOT OTHERWISE

2  SUBJECT TO DISCOVERY, CLOSED QUOTES.  THAT IS SAUL VS. SPRINT

3  NEXTEL CORP, 2013 WESTLAW 501783, AT PAGE 7, THAT IS FROM

4  KANSAS.

5      AND THE NORTHERN DISTRICT OF CALIFORNIA HAS REACHED A

6  SIMILAR DECISION IN RE JDS UNIPHASE CORP SECURITIES LITIGATION.

7      COURTS ALSO NEED TO CONSIDER IN EVALUATING THIS TWO-PART

8  TEST POLICY CONSIDERATIONS INCLUDING THE RIGHT OF THE PARTY TO

9  RETAIN AN EXPERT OF ITS OWN CHOOSING, THE PREJUDICE THE

10  RETAINING PARTY MIGHT EXPERIENCE IF NOT ALLOWED TO CHOOSE ITS

11  OWN EXPERT AND MAINTAINING THE INTEGRITY OF THE JUDICIAL

12  PROCESS.  THE PARTY SEEKING DISQUALIFICATION BEARS THE BURDEN

13  OF SHOWING THE EXISTENCE OF THE CONFIDENTIALITY AND ITS

14  NONWAIVER.

15      IN THIS CASE, INITIALLY, I THINK IT'S SOMEWHAT UNCLEAR

16  WHETHER MITCHELL ACTUALLY HAD THE REQUISITE CONFIDENTIAL

17  RELATIONSHIP WITH DR. SULLIVAN.  AS THE DECLARATIONS FROM BOTH

18  INDIVIDUALS INDICATE, MITCHELL AND DR. SULLIVAN DID EXECUTE A

19  NONDISCLOSURE AGREEMENT, NDA, WHICH WAS BACKDATED TO APPLY TO

20  THE SECOND MEETING BETWEEN THE TWO ENTITIES OR INDIVIDUALS.

21  BUT THE NDA DEFINES THE SCOPE OF THE PROJECT AS, QUOTE,

22  DISCUSSIONS AND INFORMATION RELATED, BUT NOT LIMITED TO A

23  POTENTIAL BUSINESS RELATIONSHIP REGARDING DATA ASSETS.  THIS

24  LANGUAGE DOES NOT CLEARLY ESTABLISH THAT REQUISITE CONFIDENTIAL

25  INFORMATION OF -- OR EXCUSE ME, CONFIDENTIAL RELATIONSHIP.  BUT

1    THE BIGGER ISSUE TO ME IS THE SECOND ELEMENT, AND THAT IS, I

2    FIND THAT MITCHELL HAS NOT ESTABLISHED THAT THERE WAS A

3    DISCLOSURE OF CONFIDENTIAL OR PRIVILEGED INFORMATION THAT

4    AFFECTS DR. SULLIVAN'S WORK WITH AUDATEX IN THIS CASE.  WITHOUT

5    PROVIDING ANY SPECIFIC INFORMATION THAT IT DISCLOSED, MITCHELL

6    CLAIMED THAT MS. RAVI NEMANI'S DECLARATION, THAT IT SHARED,

7    QUOTE, SPECIFIC DETAILS ABOUT MITCHELL'S POTENTIAL NEW DATA

8    PRODUCTS, CLOSED QUOTES, AND DISCUSSED HOW INTENSITY COULD

9    SUPPORT THE, QUOTE, DEVELOPMENT AND RELEASE OF THESE NEW

10   PRODUCTS, CLOSED QUOTE.

11        MITCHELL DOES NOT EXPLAIN HOW THIS INFORMATION, THE NEW

12   DATA PRODUCTS, RELATE IN ANY WAY TO THE LEGAL STRATEGIES OR

13   LITIGATION-RELATED ISSUES IN GENERAL OR SPECIFICALLY IN THIS

14   CASE.  I FIND THAT DR. SULLIVAN'S INTERACTIONS WITH MITCHELL

15   WERE VERY, VERY -- AT THE VERY BEGINNING OF THAT RELATIONSHIP,

16   THERE MAY HAVE BEEN SOME INFORMATION THAT MITCHELL PROVIDED TO

17   HIM, BUT BECAUSE IT IS RELATING TO THESE NEW DATA PRODUCTS AND

18   HOW THEY COULD RELEASE NEW PRODUCTS, TO THE EXTENT THAT THEY

19   DID PROVIDE ANY CONFIDENTIAL INFORMATION, I DON'T SEE HOW THAT

20   AFFECTS IN ANY WAY HIS WORK WITH AUDATEX ON THESE PRODUCTS AND

21   PATENTS THAT HAD BEEN IN PLACE FOR A WHILE.  I FIND THAT THERE

22   IS NO CONNECTION BETWEEN THOSE TWO, AND THAT MITCHELL DIDN'T

23   PROVIDE THAT INFORMATION OR MAKE THAT -- ESTABLISH THAT FACT.

24        IN ADDITION, AUDATEX DID PROVIDE EVIDENCE INDICATING THAT

25   IT WOULD BE PREJUDICED BY HIS DISQUALIFICATION BECAUSE IT HAS

ALREADY PAID HIM A SUBSTANTIAL AMOUNT OF MONEY FOR THE WORK

THAT HE HAS DONE AND IS DOING.

ALSO, MITCHELL DOES NOT ADDRESS WHY THE PROVISIONS OF THE

PROTECTIVE ORDER ARE NOT SUFFICIENT TO PROTECT THEM IN THIS

SITUATION.  GIVEN ALL OF THE FACTS OF THIS CASE, I FIND THAT

DR. SULLIVAN DID NOT HAVE A RELATIONSHIP WITH MITCHELL THAT

PREVENTS HIM FROM SERVING AS AN EXPERT FOR AUDATEX IN THIS

LITIGATION.  I, THEREFORE, GRANT AUDATEX'S MOTION TO APPROVE

HIM AND DENY MITCHELL'S ARGUMENTS THAT HE SHOULD BE

DISQUALIFIED FROM THIS LITIGATION.

MR. WHITE:  CAN I ASK ONE QUESTION, YOUR HONOR?

THE COURT:  SURE.

MR. WHITE:  THERE WAS A SEPARATE INDEPENDENT GROUNDS

FOR OUR MOTION, I GUESS -- OR THEIR MOTION, AND EXPLAIN THE --

SO THERE ARE TWO WAYS THAT WE THINK --

THE COURT:  YEAH.  I WENT THROUGH AND I LOOKED AT THE

PROTECTIVE ORDER.  I DON'T THINK THAT THE PROTECTIVE ORDER, IT

DOES DISQUALIFY HIM.  I LOOKED AT PARAGRAPH 11 AND PARAGRAPH 4

THAT ADDRESSES THE DEFINITION OF INDEPENDENT EXPERT AND THE

EXCHANGE OF CONFIDENTIAL -- THE DEFINITION OF INDEPENDENT

EXPERT AND THE EXCHANGE OF CONFIDENTIAL INFORMATION.  AND I

FIND THAT UNDER THE FACTS OF THIS CASE, THAT THE PROTECTIVE

ORDER DOES NOT PREVENT HIM FROM SERVING AS AN EXPERT IN THIS

CASE.

MR. WHITE:  OKAY.

```
 1            THE COURT:  ALL RIGHT.  OKAY, THEN, AUDATEX FILED A

 2   NEW MOTION JANUARY 19TH, TO COMPEL A NUMBER OF ADDITIONAL

 3   DISCOVERIES, DEPOSITIONS.  THE PARTIES HAVE AGREED THAT A

 4   NUMBER OF DEPOSITIONS -- I DIDN'T WRITE DOWN THE NUMBER.  MY

 5   RECOLLECTION IS IT WAS ABOUT EIGHT OR TEN -- ARE GOING TO GO

 6   FORWARD ON SPECIFIC DATES.  THEY'RE LISTED ON -- BOTH PARTIES

 7   LIST THEM IN THEIR PAPERS.  AND I AM NOW REQUIRING, ORDERING,

 8   THE DEPOSITIONS TO GO FORWARD ON THE DATES THAT ARE SET FORTH

 9   IN AUDATEX'S MOTION AND MITCHELL'S OPPOSITION.  THEY'RE THE

10   SAME DATES.  THE ONE DEPOSITION THAT DID NOT HAVE A DATE WAS

11   STEVE MORTON.  AND THAT WAS ACTUALLY JUST MENTIONED IN

12   MITCHELL'S DOCUMENT.  DO YOU GUYS HAVE A DATE FOR THAT?

13            MR. WHITE:  WE DON'T HAVE A SPECIFIC DATE YET.  HE

14   WAS -- HE HAS BEEN CONTACTED BY AUDATEX.  WE HAVE REACHED OUT

15   TO HIM TO FIND A DATE, AND WE'RE HOPING TO SECURE A DATE IN

16   FEBRUARY FOR HIM.  AND WE'LL WORK WITH AUDATEX ON SCHEDULING

17   THAT.

18            THE COURT:  WHAT HAVE YOU HEARD FROM HIM?  IT IS YOUR

19   SUBPOENA?

20            MR. MCPHIE:  WE FINALLY DID SUBPOENA HIM.  WE

21   UNDERSTOOD INITIALLY THAT COUNSEL FOR MITCHELL IS ACCEPTING

22   SERVICE, AND WE LATER HEARD THAT THEY DID NOT.  SO IT SOUNDS

23   LIKE HE NEEDS TO BE TRACKED DOWN.  HE WAS ACTUALLY SERVED WITH

24   A SUBPOENA.  HE INFORMED US THAT HE COULDN'T GO FORWARD ON THAT

25   DATE.
```

```
1            THE COURT:  WHAT DATE DID YOU SET IT FOR?

2            MR. MCPHIE:  IT WAS THE 28TH, YESTERDAY.  BUT IT

3     SOUNDS LIKE MAYBE NOW THERE HAS BEEN SOME COMMUNICATION.

4            MR. WHITE:  HE DID CONTACT US.  HE IS A FORMER

5     EMPLOYEE OF OURS.  HE CONTACTED US, AND WE'RE TRYING TO FIND A

6     DATE TO WORK WITH HIM, AND AUDATEX WILL TRY TO FIND A DATE FOR

7     THIS ISSUE.

8            THE COURT:  OKAY.  DO YOU WANT ME TO LEAVE THAT OPEN?

9     I DO NOT WANT ANOTHER MOTION FILED ON THIS.  ARE YOU GOING TO

10    BE ABLE TO WORK OUT A DATE?

11           MR. WHITE:  I THINK SO.

12           THE COURT:  IF NOT, I'LL ARBITRARILY SET ONE AS I SIT

13    HERE RIGHT NOW.

14           MR. WHITE:  I THINK WE'LL BE ABLE TO WORK ON THAT AND

15    AGREE ON A LOT OF THINGS.

16           THE COURT:  YOU DID AGREE ON ALL THE OTHER DEPOSITION

17    DATES.  ARE YOU GOING TO BE ABLE TO AGREE ON THIS ONE?

18           MR. WHITE:  I ACCEPT COUNSEL'S REPRESENTATION THAT

19    WE'LL GET A DATE (INAUDIBLE).

20           THE COURT:  OKAY.  THE LAST DEPOSITION IS

21    FEBRUARY 11TH; IS THAT RIGHT?

22           MR. MCPHIE:  I BELIEVE THAT IS CORRECT, YOUR HONOR.

23    YES.

24           THE COURT:  IS THAT RIGHT?  SO FEBRUARY 11TH IS A

25    WEDNESDAY.  I'M GOING TO REQUIRE MR. MORTON'S DEPOSITION TO
```

1    OCCUR BY THE 16TH.  CAN YOU GET HIM IN IN THIS TIME?  YOU HAVE

2    TWO PLUS WEEKS FROM NOW.

3            MR. WHITE:  WE'LL DO EVERYTHING WE CAN.  UNLESS HE IS

4    OUT OF THE COUNTRY OR SOMETHING, WE'LL FIND OUT.

5            THE COURT:  YOU DON'T KNOW YET?

6            MR. WHITE:  I DON'T.

7            MR. MCPHIE:  AND OUR PRIMARY CONCERN, THAT I'M

8    GUESSING WE'RE GETTING THERE, IS HOW THIS THING -- (INAUDIBLE).

9            THE COURT:  YEAH.  SO I'M GOING TO REQUIRE THAT

10   DEPOSITION TO OCCUR BY FEBRUARY 16TH, UNLESS THE TWO OF YOU

11   AGREE TO A DATE AFTERWARDS, THE TWO SIDES.  AND THEN IT HAS TO

12   BE QUICKLY.  BECAUSE I DON'T KNOW WHO HE IS IN RELATION TO THE

13   NEEDS OF THE -- YOU KNOW, FOR THE EXPERTS.  BUT WE'RE MOVING

14   INTO EXPERT DISCOVERY.

15       OKAY.  THE NEXT ISSUE IS THE DEPOSITION OF PAUL

16   ROSENSTEIN.  THAT TRANSCRIPT IS SEALED.  I DON'T BELIEVE THAT

17   THERE IS ANY REASON TO GO INTO ANY OF HIS SPECIFIC TESTIMONY IN

18   ORDER TO RULE ON THIS MOTION.  AS BOTH SIDES ACKNOWLEDGE,

19   CLEARLY A 30(B)(6) DEPOSITION IS SEPARATE FROM A DEPOSITION OF

20   AN INDIVIDUAL, AND PARTIES ARE ABLE TO TAKE THE DEPOSITION OF

21   AN INDIVIDUAL, EVEN IF HE OR SHE ALSO SERVED AS A 30(B)(6)

22   WITNESS.

23       THAT BEING SAID, IN THIS CASE, I DID REVIEW THE WHOLE DEPO

24   TRANSCRIPT.  IT CLEARLY WAS NOTICED AS A 30(B)(6) DEPOSITION.

25   THE SCOPE OF THE 30(B)(6) CATEGORIES THAT HE WAS TESTIFYING ON

1   WERE VERY NARROW.  MITCHELL AND AUDATEX'S COUNSEL REPEATEDLY

2   ASKED QUESTIONS THAT, IN MY OPINION, ARE OUTSIDE THE SCOPE OF

3   THAT 30(B)(6) NOTICE.  MITCHELL REPEATEDLY OBJECTED TO THE

4   QUESTIONS AS BEING OUTSIDE THE SCOPE OF THE 30(B)(6), BUT

5   ALLOWED THE WITNESS TO THEN ANSWER THE QUESTIONS.  ONE OF THE

6   EARLY EXCHANGES ON THIS DISPUTE WAS -- I THINK WAS PARTICULARLY

7   RELEVANT.  AND MITCHELL'S COUNSEL, WHO WAS PRESENT,

8   SPECIFICALLY STATED, JUST SO WE'RE CLEAR -- THIS IS A QUOTE,

9   JUST SO WE'RE CLEAR, OUR POSITION IS, YOU GET HIS PERSONAL

10  DEPOSITION ONE TIME.  IF YOU'RE GOING TO DO IT NOW, WE'RE GOING

11  TO OBJECT TO ANY FURTHER DEPOSITION OF HIM.  I WANT TO BE CLEAR

12  ON THE RECORD, IF YOU'RE GOING TO PROCEED IN ASKING HIM

13  QUESTIONS WE THINK ARE PERSONAL DEPOSITION QUESTIONS, THAT IS

14  GOING TO BE OUR POSITION GOING FORWARD.

15      AUDATEX'S COUNSEL RESPONDED TO THAT BY STATING, YOU CAN

16  ANSWER THE QUESTION.  THERE WERE NUMEROUS OTHER INTERACTIONS

17  BETWEEN THE TWO LAWYERS OVER THIS ISSUE.  THERE WERE SEVERAL

18  TIMES WHERE COUNSEL FOR AUDATEX CLARIFIED THE -- QUOTE,

19  CLARIFIED THAT HE DID NOT, QUOTE, BELIEVE THAT THE PRIOR LINE

20  OF QUESTIONING -- DID NOT BELIEVE THAT THE PRIOR LINE OF

21  QUESTIONING IS BEYOND THE SCOPE OF THE 30(B)(6) NOTICE.  AND AS

22  I'VE INDICATED OR STATED, BOTH LAWYERS SET FORTH THIS POSITION,

23  NUMEROUS POSITIONS THROUGHOUT THE DEPOSITIONS.

24      WHAT THIS SHOWS ME IS THIS DISPUTE WAS VERY CLEAR ON THIS

25  DATE IN AUGUST, AUGUST 27TH, OF 2014.  I BELIEVE, AS I SAID,

1   THAT THERE WERE QUESTIONS BEYOND THE SCOPE OF THE NOTICED

2   30(B)(6) DEPOSITION.  MITCHELL OBJECTED, LET THE WITNESS

3   ANSWER.  AND THE WITNESS THEN DID ANSWER ON HIS OWN INDIVIDUAL

4   PERSONAL KNOWLEDGE.  AND MITCHELL STATED SPECIFICALLY THAT THIS

5   WAS HIS DEPOSITION, HIS INDIVIDUAL DEPOSITION.  AUDATEX CLEARLY

6   STATED THAT THEY DISAGREED WITH THAT POSITION.  DESPITE THAT

7   FACT -- AND THAT IS AUGUST, AUDATEX DID NOT TAKE ANY FURTHER

8   ACTION UNTIL FILING THIS MOTION IN JANUARY -- ON JANUARY 19TH,

9   OF THIS YEAR.

10      THIS COURT'S CASE MANAGEMENT ORDER REQUIRES ANY DISCOVERY

11  DISPUTES TO BE BROUGHT TO THE COURT'S ATTENTION WITHIN 30 DAYS

12  OF IMPASSE, BUT NO LATER THAN 60 DAYS AFTER GIVING -- AFTER THE

13  DATE THAT GIVES RISE TO THE DISPUTE.  THIS DISPUTE CLEARLY

14  AROSE ON AUGUST 27TH.  THE WHOLE REASON I HAVE THAT REQUIREMENT

15  IN THE -- IN THE CASE MANAGEMENT ORDER IS TO PREVENT ISSUES

16  LIKE THIS.  WHEN THERE IS CLEARLY A DISPUTE BETWEEN PARTIES, IT

17  NEEDS TO GET RESOLVED.  AUDATEX CHOSE, FOR WHATEVER REASON, NOT

18  TO DO ANYTHING WITH THIS UNTIL ALMOST FIVE MONTHS LATER.  I

19  FIND, THEREFORE, THAT THEIR MOTION IS UNTIMELY, AND I DENY IT

20  ON THAT BASIS.

21      IN ADDITION, AS I STATED, I DO BELIEVE THAT AUDATEX ASKED

22  QUESTIONS THAT WERE BEYOND THE SCOPE OF THE 30(B)(6)

23  DEPOSITION, AND THAT MITCHELL ALLOWED THE DEPONENT TO ANSWER

24  THEM IN HIS INDIVIDUAL CAPACITY.  THAT WOULD BE AN ALTERNATIVE

25  BASIS TO DENY THE MOTION.  I RECOGNIZE THAT IT IS LIKELY THAT

1   HAD AUDATEX HAD ADDITIONAL QUESTIONS, THEY WOULD HAVE ASKED HIM

2   AS AN INDIVIDUAL.  SO I THINK THERE COULD BE MORE ARGUMENT ON

3   THE MERITS OF IT, BUT TO ME, THIS WAS A DISPUTE THAT WAS CLEAR

4   IN AUGUST.  AND IT SHOULD HAVE BEEN RAISED WITH THE COURT

5   INITIALLY, OR IMMEDIATELY, IF AUDATEX BELIEVED THAT

6   MR. ROSENSTEIN'S INFORMATION WAS IMPORTANT OR RELEVANT.  SO I

7   AM DENYING AUDATEX'S MOTION TO DEPOSE -- NO -- YES, I'M DENYING

8   THE MOTION TO DEPOSE MR. ROSENSTEIN AS AN INDIVIDUAL.

9        THE NEXT ISSUE WAS INTERROGATORIES 5 THROUGH 7.  RULE

10  26(E)(1) REQUIRES LITIGANTS TO SUPPLEMENT THEIR DISCLOSURES AND

11  INTERROGATORY RESPONSES, QUOTE, A, IN A TIMELY MANNER, IF THE

12  PARTY LEARNS THAT IN SOME MATERIAL RESPECT THE DISCLOSURE OR

13  RESPONSE IS INCOMPLETE OR INCORRECT.  AND IF THE ADDITIONAL

14  CORRECTIVE INFORMATION HAS NOT OTHERWISE BEEN MADE TO THE OTHER

15  PARTIES DURING THE DISCOVERY PROCESS OR IN WRITING, OR B, AS

16  ORDERED BY THE COURT.

17       IN THIS CASE, BOTH PARTIES INDICATE THAT THE SUPPLEMENTAL

18  INFORMATION WAS PROVIDED DURING A DEPOSITION.  AS SUCH, IT HAS

19  OTHERWISE BEEN MADE TO THE -- HAS OTHERWISE BEEN MADE KNOWN TO

20  THE OTHER PARTIES DURING THE DISCOVERY PROCESS, AND I,

21  THEREFORE, AM NOT GOING TO ORDER MITCHELL TO SUPPLEMENT THE

22  INTERROGATORIES THAT WERE IDENTIFIED.

23       I DO BELIEVE THAT INFORMATION HAS BEEN MADE KNOWN TO

24  AUDATEX FROM THE DEPOSITION.  HOWEVER, I DO WANT TO REMIND BOTH

25  PARTIES THAT THEY DO HAVE A CONTINUING OBLIGATION UNDER RULE 26

1    TO SUPPLEMENT ANY RESPONSES IF NECESSARY.  YOU'RE ALL GOOD

2    LAWYERS.  YOU KNOW WHAT THAT MEANS.

3        SO I AM DENYING AUDATEX'S MOTION ON THAT RESPECT.

4        ACCESS TO EXECUTABLE AND SOURCE CODE OF THE ACCUSED

5    PRODUCTS DURING DEPOSITION.  IS THAT NOW MOOT, OR IS IT STILL

6    RELEVANT TO THE REMAINING DEPOSITIONS?

7            MR. MCPHIE:  IT IS RELEVANT, YOUR HONOR.  THERE HAS

8    BEEN A DEVELOPMENT THERE.  WE TRIED TO PROPOSE MAYBE A

9    COMPROMISE, AND WE'RE NOT QUITE THERE YET.  ONE OF THE ISSUES

10   THAT WAS RAISED IN MITCHELL'S OPPOSITION WAS THAT THE SOURCE

11   CODE WAS TO BE PRODUCED AT COUNSEL'S OFFICE, IN THIS CASE, IN

12   IRVINE, CALIFORNIA.  AND THERE IS SOME RELUCTANCE TO HAVE THAT

13   SOURCE CODE MOVED TO ANOTHER LOCATION.  UNDER THE -- WHAT WE

14   HAD PROPOSED WAS THAT TO SATISFY OUR CONCERNS ABOUT HAVING THAT

15   VARIABLE AS NEEDED DURING THE DEPOSITION, THAT THE DEPOSITION

16   TAKE PLACE AT THAT OFFICE IN IRVINE.  AND SEEING THAT WAS MAYBE

17   A WAY OF ADDRESSING THE PROTECTIVE ORDER ISSUES, BUT ALSO

18   ALLOWING FOR US TO HAVE ACCESS TO THAT DURING THE DEPOSITIONS.

19           THE COURT:  WHAT IS MITCHELL'S POSITION?  ARE YOU

20   WILLING TO AGREE TO THAT?

21           MR. WHITE:  WE'RE NOT, YOUR HONOR.  AND TWO REASONS,

22   FIRST, IS THAT IT'S NOT CONVENIENT FOR OUR WITNESSES.  IT IS

23   ADDITIONAL TRAVEL.  BUT MORE IMPORTANTLY, THERE WAS NEVER ANY

24   CONTEMPLATION OF PRODUCING THIS SOURCE CODE IN THIS MANNER.  IT

25   WAS A HEAVILY NEGOTIATED SOURCE CODE PROTECTIVE ORDER.  WE

1    AGREED HOW THAT WOULD BE HANDLED.  IT SPECIFICALLY ADDRESSES

2    HOW THE SOURCE CODE IS TO BE USED DURING DEPOSITIONS.  IT SAYS

3    IN A PRINTED FORMAT.  SO THIS IDEA THAT WE NEED TO PROVIDE THEM

4    WITH A COMPUTER, I'M NOT EVEN SURE WHAT ALL HAS TO BE ON IT FOR

5    THEIR USE.  I GUESS SIMULTANEOUSLY WITH THE DEPOSITION OF OUR

6    FOLKS -- I MEAN, IT IS JUST A LOT OF ADDITIONAL REQUIREMENTS

7    BURDENED ON US THAT WAS NEVER CONTEMPLATED OR DISCUSSED WITH

8    THE PARTIES BEFORE THIS OR ADDRESSED IN THE SOURCE CODE

9    PROTECTIVE ORDER.  FOR THAT REASON --

10         THE COURT:  OKAY, THAT IS WHAT I WANTED TO SEE, IF

11   YOU REACHED AN AGREEMENT.

12         MR. MCPHIE:  AND AS A PRACTICAL MATTER, AND THIS IS

13   FROM EXPERIENCE, IN SOME OF THESE CASES ALL SOFTWARE, HERE IS

14   WHAT HAPPENS IN THE DEPOSITION, THE PRINTED SOURCE, THEY START

15   TO LOOK AT IT.  THESE ARE ENGINEERS WHO ARE NOT USED TO LOOKING

16   AT PRINTED SOURCE CODE.  THEY WANT TO BE ABLE TO LOOK AT IT AND

17   SEE HOW IT FUNCTIONS NEXT TO THE OTHER FUNCTION.  AND VERY

18   OFTEN, IN PAST CASES, YOU GET THE RESPONSE, WELL, IF I COULD

19   LOOK AT THE ELECTRONIC VERSION, I COULD ANSWER YOUR QUESTION,

20   BUT IN THIS FORMAT, IT IS TOO DIFFICULT.  SO IT'S A PRACTICAL

21   CONCERN, AND WE DON'T THINK THAT DRIVING AN HOUR UP THE 5 TO

22   GET TO IRVINE IS OF ANY SIGNIFICANT BURDEN ON MITCHELL.

23         THE COURT:  ALL RIGHT.  I UNDERSTAND THAT.  HOWEVER,

24   I DO BELIEVE THAT THE PROTECTIVE ORDER CLEARLY GOVERNS THIS.

25   THESE TWO PARTIES IN THIS LITIGATION HAVE HAD NUMEROUS

1    DISPUTES, AND EVERY ISSUE HAS REALLY BEEN HOTLY CONTESTED.  THE

2    PARTIES SPENT A LOT OF TIME COMING UP WITH A PROTECTIVE ORDER,

3    AND THIS COURT IS GOING TO ENFORCE THE PROTECTIVE ORDER.

4    PARAGRAPH 21 OF THE PROTECTIVE ORDER GOVERNS THE PRODUCTION AND

5    USE OF CONFIDENTIAL SOURCE CODE.  PARAGRAPH A SPECIFICALLY

6    STATES THAT THE SOURCE CODE WILL BE MADE AVAILABLE AT COUNSEL'S

7    OFFICE, UNDER SPECIFIC SAFEGUARDS.  AND THEN PARAGRAPH B SAYS

8    THAT EACH PARTY MAY REQUEST PAPER COPIES OF SOURCE CODE

9    NECESSARY FOR COURT FILINGS, DEPOSITIONS, AND TRIAL.

10       TO ME, THIS PARAGRAPH, THE AGREEMENT BETWEEN THE TWO

11   PARTIES SPECIFICALLY CONTEMPLATED THE ISSUE THAT HAS NOW

12   ARISEN, AND IT RESOLVED IT.  AND THAT IS THAT YOU'RE GOING TO

13   USE PAPER COPIES.  I UNDERSTAND THAT AUDATEX DOESN'T BELIEVE

14   THAT THAT IS -- THAT IS AS EFFICIENT AND BENEFICIAL AS THEY

15   WOULD LIKE.  HOWEVER, YOU ALSO KNEW THAT AT THE BEGINNING OF

16   THE CASE, AS YOU JUST INDICATED IN YOUR ARGUMENT, THIS IS

17   SOMETHING YOU'VE SEEN IN PAST CASES, AS WELL AS IN THIS CASE,

18   THAT ENGINEERS LIKE TO SEE THE ACTUAL SOURCE CODE.  FOR

19   WHATEVER REASONS, THE PARTIES REACHED THIS AGREEMENT AND I'M

20   GOING TO ENFORCE THAT.  I, THEREFORE, DENY AUDATEX'S MOTION ON

21   THAT ISSUE.

22       ALL RIGHT, THE FINAL THING IS THE MODIFICATION OF THE CASE

23   MANAGEMENT ORDER.  I AM NOT GOING TO SET DIFFERENT DATES FOR

24   THE EXPERT REPORTS; HOWEVER, I AM INCLINED TO MOVE THEM BACK

25   SLIGHTLY.  I WANT TO BE CLEAR, FACT DISCOVERY CLOSES TOMORROW.

1    YOU CANNOT DO ANY FACT DISCOVERY AFTER TOMORROW EXCEPT FOR THE

2    DEPOSITIONS THAT WE'VE ALREADY DISCUSSED OR SOMETHING THAT THE

3    TWO SIDES AGREE ON.  AND THEN THAT IS OUT OF MY CONTROL.  THAT

4    IS A SEPARATE AGREEMENT; OTHERWISE, FACT DISCOVERY CLOSES

5    TOMORROW.

6        BECAUSE THE DEPOSITIONS ARE NOT GOING TO FINISH UNTIL MID

7    FEBRUARY, WHAT I AM INCLINED TO DO IS TO MAKE THE OPENING

8    EXPERT REPORT DEADLINE FEBRUARY 18TH.  FOR BOTH PARTIES,

9    REBUTTAL EXPERTS FOR BOTH PARTIES, MARCH 2ND, AND THEN CLOSE OF

10   EXPERT DISCOVERY, MARCH 26TH.  THOSE WERE THE DATES PROPOSED BY

11   AUDATEX, FOR AUDATEX.  AND I WOULD BE IMPOSING THEM FOR BOTH.

12   IF YOU WANT TO BE HEARD ON THAT ONE, THAT IS ONE I'M GOING TO

13   LET BOTH SIDES BE HEARD ON.

14            MR. MCPHIE:  THAT'S ACCEPTABLE, YOUR HONOR, TO

15   AUDATEX.

16            MR. WHITE:  THE ONLY SUGGESTION THAT WE WOULD HAVE,

17   YOUR HONOR, IS TO PUSH BACK THE MARCH 2ND DATE A WEEK.  THE

18   REASON FOR THAT IS FEBRUARY 18TH IS WHEN WE'RE GOING TO GET TWO

19   REPORTS FROM THE PLAINTIFF, THEIR INFRINGEMENT REPORT AND ALSO

20   THEIR DAMAGES REPORT.  AND SO THE BULK OF THE WORK ON THE

21   MARCH 2ND DATE FALLS TO US.  AND WE WOULD APPRECIATE AN

22   ADDITIONAL WEEK ON THAT.  WE THINK WE CAN GET THE REPORT, THE

23   DEPOSITIONS DONE IN THE WEEKS THAT FOLLOW.  WE DON'T THINK WE

24   NEED 24 DAYS FOR THE DEPOSITIONS.  WE WOULD APPRECIATE SOME

25   ADDITIONAL TIME TO RESPOND TO THOSE TWO INITIAL REPORTS THAT

1    WE'RE GOING TO BE RESPONDING TO ON THE 2ND AND HAVE ADDITIONAL

2    TIME.

3            THE COURT:  HOW MANY EXPERTS ARE THERE?

4            MR. WHITE:  SO THERE WILL LIKELY BE -- THERE SHOULD

5    BE THREE REPORTS, FEBRUARY 18TH.  THERE SHOULD BE AN INITIAL

6    REPORT FROM AUDATEX ON INFRINGEMENT, AN INITIAL REPORT FROM

7    THEM ON DAMAGES, AND A REPORT FROM US ON VALIDITY.

8            THE COURT:  OKAY.

9            MR. WHITE:  SO IN ACTUALITY, THEY HAVE ONE RESPONSE,

10   AND WE HAVE TWO AT THAT STAGE.

11           THE COURT:  YES, SIR.

12           MR. MCPHIE:  OUR CONCERN HAS JUST BEEN THE HISTORY IN

13   THIS CASE HAS NOT SUGGESTED THAT SCHEDULING DEPOSITIONS IS

14   EASY.

15           THE COURT:  YEAH.

16           MR. MCPHIE:  AND SO PROVIDING FOR A SHORTER TIME

17   PERIOD FOR US TO DO THAT I THINK IS DANGEROUS.  AND THE ONLY

18   THING I WOULD SAY IS THERE IS GOING TO BE MAYBE FOUR

19   DEPOSITIONS.  I DON'T KNOW HOW MANY EXPERTS THEY HAVE.  IT

20   COULD BE --

21           THE COURT:  SIX, WOULDN'T IT?

22           MR. MCPHIE:  IT WOULD BE SIX AT THE MOST.  IT COULD

23   BE THE SAME EXPERT FOR INFRINGEMENT AND VALIDITY, SO AT MOST

24   SIX.  AND WE THINK WE HAVE RIGHT NOW THREE WEEKS TO DO THAT.

25           THE COURT:  HOW MANY HAVE YOU DESIGNATED?

```
1            MR. MCPHIE:  I BELIEVE WE'VE DESIGNATED THREE.

2            THE COURT:  SO YOU ANTICIPATE THREE EXPERTS, AND THEY

3    NEED TO DEPOSE THOSE THREE, ASSUMING THEY DO.

4            MR. MCPHIE:  YEAH, TWO OR THREE.

5            THE COURT:  TWO OR THREE.

6            MR. WHITE:  SAME FOR US, TWO OR THREE.

7            THE COURT:  SO IT COULD BE SIX.  I'LL GIVE YOU A

8    COUPLE OF EXTRA DAYS.  THE REPORTS ARE FEBRUARY 18, SO TWO

9    WEEKS WOULD BE MARCH 4TH.  THAT WILL GIVE YOU A LITTLE

10   ADDITIONAL TIME TO DO THAT.  BUT I DO THINK WE NEED TO GET THIS

11   DISCOVERY COMPLETED AND GET THIS CASE MOVING.

12       ALL RIGHT.  SO IT WILL BE, FACT DISCOVERY CLOSES TOMORROW;

13   OPENING REPORTS, FEBRUARY 18TH; REBUTTAL REPORTS, MARCH 4TH;

14   CLOSE OF EXPERT DISCOVERY, MARCH 26TH.  ALL OTHER DATES REMAIN

15   AS SET.

16       I HATE TO EVEN ASK THIS, BUT ANY OTHER ISSUES THAT I HAVE

17   TO ADDRESS TODAY FOR AUDATEX?

18           MR. MCPHIE:  YOUR HONOR, JUST ONE THAT WE OUGHT TO

19   ADDRESS FOR FINALIZING THE DEPOSITION SCHEDULE.  AND THIS GOES

20   BACK TO THE ISSUE OF INDIVIDUAL VERSUS CORPORATE DEPOSITIONS.

21   THE DATES PROVIDED IN MITCHELL'S OPPOSITION DID PROVIDE DATES

22   FOR TWO 30(B)(6) DATES.  ONE 30(B)(6) DATE DIRECTED TO FOUR

23   TOPICS, AND ANOTHER 30(B)(6) DATE RELATING TO ALL THE OTHER

24   TOPICS IN THE 30(B)(6) NOTICE.  WE HAVE NOT RECEIVED DATES FOR

25   INDIVIDUAL DEPOSITIONS FOR TWO INDIVIDUALS WHO HAVE BEEN
```

1    DESIGNATED AS THE 30(B)(6) WITNESSES ON THOSE TWO TOPICS.

2            THE COURT:  YOU DIDN'T LIST THEM EITHER, DID YOU?  I

3    DIDN'T SEE THAT THERE WERE -- WAS A DISPUTE.

4            MR. MCPHIE:  I WAS UNCLEAR.  I KNOW YOUR HONOR

5    MENTIONED THAT WE HAD PROVIDED A LIST IN OUR INITIAL BRIEF.  I

6    WASN'T CLEAR WHAT THAT WAS.

7            THE COURT:  SO MITCHELL'S IS ON PAGE 12 OR THE ECF

8    PAGE 15.

9            MR. WHITE:  RIGHT.  WE ACTUALLY -- SO WHEN WE SAW

10   THIS CHART, WE ACTUALLY PREPARED OURSELVES FOR PURPOSES OF

11   TODAY OUR --

12           THE COURT:  SO I HAVE YOURS ON PAGE 6 OR ECF PAGE 9.

13   THAT IS WHERE I CAME UP WITH THESE TWO.

14           MR. WHITE:  SO THAT IS CORRECT, YOUR HONOR.  SO THOSE

15   DATES WERE PROVIDED SINCE THE TIME WE FILED.  THE QUESTION HAS

16   COME UP RELATED TO THE 30(B)(6) DEPOSITIONS, AS THEY RELATE TO

17   THE PERSONAL DEPOSITIONS.

18           THE COURT:  FOR WHOM?  WHO ARE THE 30(B)(6)?

19           MR. WHITE:  SO FOR JANUARY 30TH, JESSE HERERRA, THAT

20   IS TOMORROW.  WE HAVE NOTICED THAT AS A 30(B)(6) DEPOSITION ON

21   THE BULK OF THE TOPICS.  AND ON FEBRUARY 6TH, MR. DAY HAS BEEN

22   DESIGNATED ON FOUR FINANCIAL TOPICS.  THAT'S HOW THOSE

23   DEPOSITIONS HAVE BEEN NOTICED.  THAT'S WHAT WE'RE PLANNING ON

24   GOING FORWARD ON.  THE QUESTION THEN IS, AS TO THESE REQUESTED

25   DATES FOR MR. HERERRA AND MR. DAY, TO BE DEPOSED IN PERSONAL

1   ASPECTS.

2          THE COURT:  DID YOU NOTICE THOSE DEPOSITIONS?

3          MR. WHITE:  YES.  THEY HAVE BEEN NOTICED.

4          THE COURT:  FOR WHEN?

5          MR. WHITE:  THEY WERE ALWAYS DONE SEPARATELY.

6          THE COURT:  FOR WHEN?  WHEN WERE THEY NOTICED FOR?

7          MR. WHITE:  THE ORIGINAL DEPOSITIONS WERE NOTICED

8   BACK IN DECEMBER.  WE NOTICED NEW DATES, I BELIEVE, IN

9   FEBRUARY.

10          THE COURT:  ALL RIGHT.  WHEN ARE THEY --

11          MR. WHITE:  THE 12TH AND THE 13TH.

12          MR. MCPHIE:  SO WE WOULD PREFER TO HAVE THEM RUN IN

13   CONJUNCTION WITH THE 30(B)(6) TOPICS, SO THERE IS NOT A LOT OF

14   TIME LEFT IN THIS CASE.  AND TO HAVE THESE INDIVIDUALS DEPOSED

15   TWICE, WHEN I REALLY DON'T KNOW WHAT THE DIFFERENT TESTIMONY IS

16   GOING TO BE IN THE PERSONAL CAPACITY, VERSUS THE 30(B)(6).

17          THE COURT:  OH, I THINK WE JUST SAW THAT BY READING

18   THE DEPOSITION.

19          MR. MCPHIE:  I UNDERSTAND.  BUT WE AGREED WITH THEIR

20   30(B)(6) WITNESS, TO TAKE THE DEPOSITION SIMULTANEOUS WITH

21   PERSONAL AND 30(B)(6) AT THE SAME TIME.

22          THE COURT:  THAT'S WHAT MOST PEOPLE DO.  AND I WAS

23   SURPRISED THAT THIS HAS NOT HAPPENED IN THIS CASE.

24          MR. MCPHIE:  THAT'S WHAT WE THINK SHOULD HAPPEN.  AND

25   GIVEN THE TIME TO FIND ADDITIONAL DAYS FOR THESE TWO WITNESSES,

1    I THINK --

2              THE COURT:  CAN YOU DO 30(B)(6) IN THE MORNING, AND

3    THE INDIVIDUAL IN THE AFTERNOON?  HOW LONG ARE THESE DEPOS?

4              MR. WHITE:  THE 30(B)(6) WILL BE PRETTY EXTENSIVE

5    JUST AS IT WAS FOR THE 30(B)(6) AUDATEX.  I HAVE A PROPOSAL

6    THAT MAYBE GETS US HALFWAY.

7              THE COURT:  WHAT IS THAT?

8              MR. MCPHIE:  FOR MR. DAY, IT IS JUST FOUR TOPICS.  I

9    DO THINK THAT FOR MR. DAY, WE CAN COMPLETE HIM IN A SINGLE DAY

10   AND DO IT AT THE SAME TIME.  MR. HERERRA PRESENTS MORE OF A

11   DIFFICULTY.  HIS DEPOSITION IS SUPPOSED TO GO FORWARD TOMORROW

12   AS A DESIGNEE.  HE HASN'T BEEN PREPARED -- OR WE HAVE NOT

13   PREPARED TO TAKE THAT DEPOSITION IN HIS PERSONAL CAPACITY FOR

14   PRECISELY THE REASONS THAT WE HAVE HEARD EARLIER, THAT MITCHELL

15   WANTED TO KEEP THESE THINGS SEPARATE.  SO WE WOULD PROPOSE THAT

16   MR. HERERRA GO FORWARD IN A PERSONAL CAPACITY ON FEBRUARY 12TH

17   OR 13TH.

18             THE COURT:  IS HE AVAILABLE?

19             MR. MCPHIE:  WE DON'T KNOW.  WE HAVE TO ASK.  BUT I

20   WOULD SUGGEST -- HE'S SENIOR MANAGEMENT IN OUR COMPANY, AND TO

21   HAVE HIM SIT THROUGH TWO FULL DAYS OF DEPOSITION, WE DON'T

22   THINK IS APPROPRIATE.

23             THE COURT:  THEY HAVE THE RIGHT TO DO THAT.  THEY

24   HAVE THE RIGHT TO HAVE A PERSONAL DEPOSITION AND A -- YOU KNOW,

25   YOU CHOSE HIM AS THE 30(B)(6) FOR THESE TOPICS.

1            MR. WHITE:  WELL, THEN I WOULD LIKE THE PERSONAL

2    DEPOSITION AND THE 30(B)(6) -- I'LL TRY AND COMPLETE IT ALL IN

3    ONE DAY.  WE STOPPED AT SEVEN HOURS, AND WE'D LIKE SOME

4    ADDITIONAL TIME WITH THAT WITNESS.  IF WE'RE NOT GOING TO AGREE

5    TO DO SIMULTANEOUSLY FOR EFFICIENCY, WE'D LIKE TO TAKE THE

6    DEPOSITION IN A PERSONAL CAPACITY AS WELL.

7            THE COURT:  HAVEN'T YOU ALREADY TAKEN THAT?  THAT IS

8    WHAT I JUST --

9            MR. WHITE:  WE DID, AND SO THE POINT WAS, IS WE -- I

10   AGREED TO DO THEM SIMULTANEOUSLY.  WE'D ASKED IN ADVANCE FOR

11   ADDITIONAL TIME.  GIVEN THAT SHE'S THE DESIGNEE FOR 40-PLUS

12   TOPICS, AND WE WERE GOING TO RUN PERSONAL SIMULTANEOUS WITH

13   THAT, WE'RE TRYING TO DO IT EFFICIENTLY.  SO IF THEY AGREE TO

14   GO SIMULTANEOUS.  BUT WE OBVIOUSLY DID NOT HAVE ENOUGH TIME TO

15   GET TO ALL THE ISSUES, SO WE WOULD REQUEST THAT WE HAVE

16   ADDITIONAL TIME WITH HER AS WELL.

17           MR. MCPHIE:  YOUR HONOR, THAT WAS MITCHELL'S CHOICE.

18   WE MADE IT VERY CLEAR, WE SAID, LOOK, IF YOU WANT THE

19   CONVENIENCE TO DO PERSONAL TOPICS AND THE CORPORATE TOPICS IN

20   THE SINGLE DEPOSITION, YOU'RE WELCOME TO DO THAT IN ONE DAY.

21   THAT IS YOUR CHOICE.  BUT UNDERSTAND THAT WE'RE NOT GOING TO

22   GIVE YOU ADDITIONAL TIME UNDER 30(B)(6) TOPICS.  WE'RE NOT

23   GOING TO RAISE OBJECTIONS DURING THE DEPOSITION.  YOU CAN ASK

24   PERSONAL TOPICS, CORPORATE TOPICS.  WE MADE THAT VERY CLEAR IN

25   ADVANCE.

1        THE COURT:  YEAH, I'M GOING TO -- I'M NOT GOING TO

2   REOPEN THAT DEPOSITION.  I WILL SAY, I FIND IT VERY

3   DISAPPOINTING THAT THIS IS HOW COUNSEL IS CHOOSING TO PROCEED

4   FORWARD ON THESE.  BUT I DO BELIEVE THAT THE LAW REQUIRES --

5   ALLOWS THEM TO DO THIS.

6        SO I'M GOING TO REQUIRE MR. DAY'S DEPOSITION, BOTH THE

7   30(B)(6) AND THE INDIVIDUAL, TO OCCUR WITHIN THE SEVEN HOURS ON

8   FEBRUARY 6TH.  THEY CAN BE IN THE -- YOU CAN DO 30(B)(6) IN THE

9   MORNING, INDIVIDUAL IN THE AFTERNOON, OR YOU CAN DO ONE DAY

10  WITH BOTH TOPICS.  I DON'T CARE HOW YOU DO IT.  BUT IT'S GOING

11  TO HAPPEN ON FEBRUARY 6 IN SEVEN HOURS.

12       ON MR. HERERRA, I'M GOING TO ALLOW YOU A SECOND DAY.

13  BECAUSE IF HE'S PREPARED AND READY TO GO ON THE 30TH, IT MAY

14  MAKE SENSE IF HE'S AVAILABLE, TO THEN DEPOSE HIM ON THE 2ND OR

15  3RD OF FEBRUARY, DEPENDING ON HIS AVAILABILITY.  I'M NOT GOING

16  TO REQUIRE IT TO BE AT THE END.  WE'RE GOING TO DO IT BASED ON

17  HIS AVAILABILITY.  WE NEED TO GET THESE DEPOSITIONS DONE.

18            MR. MCPHIE:  CAN WE HAVE SOME SORT OF LIMIT ON THAT?

19  I MEAN, I JUST THINK THAT IS -- WHAT IS FAIR IS FAIR, RIGHT.  I

20  MEAN, IT DOESN'T SEEM RIGHT TO IMPOSE THE LIMIT ON US, WHEN

21  WE'RE TRYING TO DO THINGS EFFICIENTLY, AND THEN HAVE THEM HAVE

22  TWO FULL DAYS WITH A VERY SENIOR PERSON.

23            THE COURT:  DID YOU REACH ANY SORT OF AGREEMENT WITH

24  THEM?  THAT'S THE PROBLEM I HAVE.

25            MR. MCPHIE:  WE DID IN ADVANCE.  WE REQUESTED

1    ADDITIONAL TIME, AND THEN THEY SAID -- THE RESPONSE WAS, WE

2    DEFINITELY SIGNED THIS ISSUE UPFRONT.

3         MR. WHITE:  AND WHICH WE DID THINGS EFFICIENTLY.

4         THE COURT:  WELL, ON BOTH SIDES, THIS HAS NOT BEEN

5    EFFICIENT.  I'M JUST RULING ON A MOTION FOR THE THIRD TIME WITH

6    YOU GUYS.  SO I'M NOT PERSUADED BY THIS EFFICIENCY ARGUMENT.

7    WE'RE JUST AT THE END OF DISCOVERY.

8         HOW LONG DO YOU NEED TO DEPOSE HIM?  IT DOESN'T SEEM IT

9    SHOULD TAKE 14 HOURS.

10        MR. WHITE:  I DON'T THINK SO, YOUR HONOR.  I MEAN, IF

11   WE HAVE HALF DAYS AND --

12        THE COURT:  SOME TIME ON THE INDIVIDUAL?

13        MR. WHITE:  ON THE INDIVIDUAL, YES.

14        THE COURT:  SO LET'S DO THAT.  THE 30(B)(6) WILL BE

15   SEVERAL HOURS.  THE INDIVIDUAL WILL BE THREE HOURS.  AND IF YOU

16   CAN DO IT ON FEBRUARY 2ND OR 3RD, THAT WOULD BE -- IF HE CAN DO

17   IT --

18        MR. MCPHIE:  YOUR HONOR, I'M GOING TO HAVE TO CHECK.

19        THE COURT:  THAT WOULD BE IDEAL FOR HIM, I WOULD

20   THINK, PREPARE ONCE, GET IT OVER WITH.

21        MR. MCPHIE:  THE SCHEDULING HERE, WE'LL HAVE TO GET

22   BACK AND SEE WHAT THAT IS IN TERMS OF AVAILABILITY.

23        THE COURT:  TALK TO EACH OTHER.  CALL THESE PEOPLE.

24   GET THIS WORKED OUT.  GET THIS CASE, GET THE DISCOVERY DONE,

25   AND WE'LL MOVE ON.  ALL RIGHT.

1          MR. MCPHIE:  THE ONLY OTHER ISSUE WE DIDN'T TALK

2     ABOUT IS MR. YORKS' DEPOSITION, THE PROSECUTING ATTORNEY.  THE

3     FIRST ISSUE YOU TOOK UP TODAY WAS ORDERING THAT DEPOSITION.

4          THE COURT:  RIGHT.

5          MR. MCPHIE:  WE NEED TO GET THAT DONE, I ASSUME, IN

6     THE SAME TIME FRAME?

7          THE COURT:  YES, SAME THING.  THAT DEPOSITION HAS TO

8     OCCUR BY -- WHAT DATE DID I USE?

9          MR. MCPHIE:  THE 16TH.

10         THE COURT:  IT HAS TO BE DONE BY THE 16TH.

11         MR. WHITE:  THAT WILL BE VERY SIMPLE, YOUR HONOR.

12    GIVEN HOW LIMITED IT IS, WE SHOULD BE ABLE TO TAKE CARE OF

13    THAT.

14         THE COURT:  PERFECT.  THANK YOU, COUNSEL.

15         MR. WHITE:  THANK YOU, YOUR HONOR.

16         MR. MCPHIE:  THANK YOU, YOUR HONOR.

17                   (RECESS AT 11:21 A.M.)

18                        ---000---

19

20

21

22

23

24

25

C-E-R-T-I-F-I-C-A-T-I-O-N

I HEREBY CERTIFY THAT I AM A DULY APPOINTED, QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE; THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL CONFERENCE.

DATED:  FEBRUARY 2, 2015, AT SAN DIEGO, CALIFORNIA

_____
S/DEBORAH M. O'CONNELL, CSR #10563
REGISTERED PROFESSIONAL REPORTER